**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF MARYLAND, c/o Office of the Attorney General, Civil Litigation Division, 200 Saint Paul Place, Baltimore, MD 21202 (resident of Baltimore City),

ANTHONY G. BROWN, in his official capacity as Attorney General of Maryland, Office of the Attorney General, 200 Saint Paul Place, Baltimore, MD 21202 (resident of Baltimore City),

MARYLAND POLICE TRAINING AND STANDARDS COMMISSION, c/o Office of the Attorney General, Civil Litigation Division, 200 Saint Paul Place, Baltimore, MD 21202 (resident of Baltimore City),

PRINCE GEORGE'S COUNTY, MARYLAND, c/o Office of Law, Litigation Division,1301 McCormick Drive, Suite 4100, Largo, MD 20774 (resident of Prince George's County), and

MONTGOMERY COUNTY, MARYLAND, c/o Office of the County Attorney, 101 Monroe Street, 3d Floor, Rockville, MD 20850 (resident of Montgomery County),

Defendants.

Civ. No. 26-4110

**COMPLAINT**

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief and alleges as follows:

## INTRODUCTION

1. Federal law prohibits state and local governments from regulating the activities of the Federal Government. *United States v. Washington*, 596 U.S. 832, 838 (2022). Despite this well-established principle, the State of Maryland and the counties of Prince George's County, Maryland and Montgomery County, Maryland have recently enacted laws that purport to do exactly what the Constitution says they cannot: regulate how federal law enforcement agencies and their officers carry out their official duties in those jurisdictions.

2. Specifically, on April 13, 2026, the Maryland General Assembly passed S.B. 1, 2026 Leg., ch. 612, 2026 Md. Laws ___ (codified at Md. Code Ann., Pub. Safety §§ 3-207, 3-535, 3-536 (2026)) ("SB-1"), a state law banning facial coverings for federal law enforcement officers and requiring them to provide identification when on duty within the State. A copy of SB-1 is attached hereto as Exhibit A.

3. Prior to the enactment of SB-1, Defendants recognized the constitutional infirmity of Maryland's new law when Maryland's Attorney General questioned its legality:

> In my view, there is a high likelihood that a court would find that application of SB 1's face-covering prohibition or identification requirement to federal law enforcement would violate the Supremacy Clause, and specifically, the intergovernmental immunity doctrine, because to do so would directly regulate the federal government.

Letter from Anthony G. Brown, Att'y Gen., to Wes Moore, Gov. of Md., at 2 (May 12, 2026), https://mgaleg.maryland.gov/2026RS/ag_letters/sb0001.pdf (attached hereto as Exhibit B).

4. Maryland Senate President Bill Ferguson made similar remarks concerning the applicability of the Maryland law to federal law enforcement and acknowledged that Maryland's SB-1 was a direct challenge to the Supremacy Clause of the U.S. Constitution:

> We believe in trust between law enforcement and the people they serve. … What we are seeing by ICE in Maryland and across the country is abhorrent to Maryland values. … The real question is: Does the Supremacy Clause outweigh federalism,

> and, particularly in a space when it is about a federal agency not having a policy, does state law trump — no pun intended. … Fundamentally, I think state's rights matter, and I think that's what will prevail.

Hannah Gaskill, *MD Senate Passes ICE Anti-Masking Bill Despite Constitutional Questions*, The Daily Record (Feb. 3, 2026), https://thedailyrecord.com/2026/02/03/maryland-senate-ice-anti-masking-bill/.

5. Not to be outdone by the Maryland state legislature, Prince George's County introduced a similar law on March 17, 2026, banning facial coverings for law enforcement officers working for federal law enforcement agencies and requiring them to display identification when on duty within the county. Prince George's Co., Md. Code § 18-124 (2026). Days before the introduction of this "emergency bill," Prince George's County Council Chair Krystal Oriadha explained, "ICE and their terrorist tactics have no place in Prince George's County."[1] A copy of Prince George's Co. Code § 18-124 is attached hereto as Exhibit C.

6. Like Maryland's SB-1, Prince George's Co. Code § 18-124's constitutionality was questioned by the county's legal counsel before its enactment:

> [T]he legal impediment to the enactment of [Prince George's Co. Code § 18-124] is the County's lack of legal authority to require ICE agents to refrain from wearing facial coverings. … The official declaration that constitutes a public health emergency could be viewed by a court as the County's attempt to regulate an area where only the federal government has the ability to regulate in violation of the Constitution's Supremacy Clause.

Memorandum from Terry L. Bell, Assoc. Co. Att'y to David Murry, Council Administrator, at 2-3 (Mar. 2, 2026). A copy of this memorandum is attached to Prince George's Co. Code § 18-124 in Exhibit C.

---

[1] *Bills To Limit ICE Impact Introduced In Prince George's County*, NBC Washington (Mar. 3, 2026), https://www.nbcwashington.com/news/local/prince-georges-county/bills-ice-prince-georges-county/4069783/.

7. Neighboring Montgomery County passed "The Unmask ICE Act" weeks later, which like Maryland's SB-1 and Prince George's Co. Code § 18-124, prohibits the wearing of facial coverings by federal law enforcement agents and requires them to provide identification. Montgomery Co., Md. Code § 35-13E (2026). A copy of Montgomery Co. Code § 35-13E is attached hereto as Exhibit D.

8. And like Maryland's SB-1 and Prince George's Co. Code § 18-124, Montgomery Co. Code § 35-13E's constitutionality was questioned by the county's legislative attorney, who considered "it [] uncertain whether the County could enforce the law due to ongoing legal battles over the constitutionality of state and local mask bans." Memorandum from Ludeen McCartney-Green to Montgomery Co. Council, at 2 (Apr. 23, 2026) (attached to Montgomery Co. Code § 35-13E in Exhibit D).

9. These government lawyers working for the State of Maryland and Prince George's County and Montgomery County were right about their constitutionality concerns, because courts across the country have enjoined materially similar state and local laws as unconstitutional direct regulations of the Federal Government. *See United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026); *United States v. Virginia*, __ F. Supp. 3d __, No. 26-0545, 2026 WL 2411521, at *15 (E.D. Va. Aug. 18, 2026); *United States v. City of Phila.*, __ F. Supp. 3d __, No. 26-4208, 2026 WL 1906075, at *14 (E.D. Pa. July 2, 2026); *United States v. New York*, __ F. Supp. 3d __, No. 26-1360, 2026 WL 2225423, at *25 (N.D.N.Y. Aug. 3, 2026). This Court should join the growing number of other courts that are putting an end to this type of blatant unconstitutional regulation of the Federal Government and invalidate and enjoin Maryland's SB-1, Prince George's County Code § 18-124, and Montgomery County Code § 35-13E (collectively "the Challenged Laws").

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

11. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

12. This Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

13. Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice ("DOJ") and its component law enforcement agencies—*e.g.*, the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA")—and the Department of Homeland Security ("DHS") and its component law enforcement agencies—*e.g.*, U.S. Immigration and Customs Enforcement ("ICE") (which includes Homeland Security Investigations ("HSI")) and U.S. Customs and Border Protection ("CBP").

14. Defendant State of Maryland is a State of the United States of America.

15. Defendant Anthony G. Brown is the Attorney General of Maryland and is being sued in his official capacity as the State of Maryland's chief law enforcement official charged with enforcing and defending SB-1.

16. Defendant Maryland Police Training and Standards Commission is an independent commission functioning within the Department of Public Safety and Correctional Services, an executive department of the State of Maryland, established pursuant to Md. Code Ann., Pub. Safety § 3-202 (2025). Defendant Maryland Police Training and Standards Commission is vested with responsibility for promulgating uniform policies to implement SB-1.

17. Defendant Prince George's County is a political and geographical subdivision of the State of Maryland.

18. Defendant Montgomery County is a political and geographical subdivision of the State of Maryland.

## BACKGROUND

### I. FEDERAL LAW ENFORCEMENT

19. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (citation omitted).

20. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3. Subordinate officers in various federal agencies, including DOJ and DHS, and their components, assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203-04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

21. Federal law empowers the Executive to provide for and dictate the conduct of federal law enforcement officers in carrying out their official duties. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all

functions of other officers, agencies, and employees of DOJ in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of DHS the power to "control, direct[], and supervis[e]" all DHS employees).

22. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See, e.g.*, 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 10 U.S.C. § 723(b)(1) (providing exception to certain identification requirements to individuals who "do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties").

23. Because the Federal Government's authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the states and their localities, including the State of Maryland.

24. For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act, *codified as amended at* 21 U.S.C. §§ 801, *et seq.* In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[2]

---

[2] *See also Mission Statement*, DEA, https://perma.cc/Y2FW-H3BV.

25. As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[3]

26. DHS, through ICE and CBP, is responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act of 1952 (as amended), Pub. L. 82–414, ch. 477, 66 Stat. 163 (1952) (codified at 8 U.S.C. § 1101*, et seq.*) ("INA"), which, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, makes up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

27. The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking. *See* 8 U.S.C. §§ 1324, 1232.

## II. MARYLAND'S SB-1

28. Maryland Governor Wes Moore signed SB-1 into law on May 26, 2026, and it is now codified at Md. Code Ann., Pub. Safety §§ 3-207, 3-535, 3-536 (2026). Although it does not take effect until October 1, 2026, SB-1 is a state law that will ban the wearing of facial coverings for federal, state, and local law enforcement officers within the State of Maryland and will require law enforcement officers to provide identification when on duty within the State.

---

[3] *See also About, Mission and Priorities*, FBI, https://www.fbi.gov/about/mission (last visited Sep. 18, 2026).

29. Shortly before passing SB-1, Maryland Senate President Bill Ferguson posted a photo on his official legislative Facebook page titled "No Masks, No Hiding" that depicted three uniformed law enforcement officers wearing facial coverings:

> *We're banning ICE agents from wearing masks in Maryland.*
>
> We're saying no to local cooperation with unchecked and unconstitutional immigration enforcement.
>
> Our neighbors deserve transparency and dignity.

Senator Bill Ferguson, [Photo], Facebook: No Masks, No Hiding (Apr. 1, 2026), https://www.facebook.com/BillForSenate/posts/were-banning-ice-agents-from-wearing-masks-in-maryland-were-saying-no-to-local-co/1331019378850153/ [https://perma.cc/2PSH-6UTN] (emphasis added).

30. It is also clear from the language of the statute itself that SB-1 is designed to reach federal law enforcement officers. Specifically, SB-1 defines the term "law enforcement agency" to include "a law enforcement agency of … *the federal government*." Md. Code Ann., Pub. Safety § 3-535(a)(3) (2026) (emphasis added); *see also id.* § 3-536(a)(3) ("'Law enforcement agency' has the meaning stated in § 3-535 of this subtitle."). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency," which includes the Federal Government. *Id.* §§ 3-535(a)(4), 3-536(a)(4). Therefore, when SB-1 speaks to "law enforcement officers," it speaks directly to *federal* law enforcement officers.

31. SB-1 further instructs that law enforcement officers—including federal law enforcement officers—"may not wear a face covering while in the performance of duty in the State, except as authorized in the uniform policy adopted by the Maryland Police Training and Standards Commission," or during certain limited and undefined types of operations (*e.g.*, "undercover operation[s]") or narrow conditions not at issue here (*e.g.*, wearing translucent shields or gas masks as part of riot gear, surgical masks, scuba diving masks, motorcycle helmets, eyewear to protect against lasers, religious headdresses, etc.). *Id.* § 3-535(c). SB-1 does provide the

Maryland Police Training and Standards Commission discretion to allow face coverings in its uniform policy "during inclement weather." *Id.* § 3-207(P)(2)(iii).

32. SB-1 also purports to require federal law enforcement officers to "wear identification on [their] outermost layer of clothing while in the performance of duty in the state." *Id.* § 3-536(c)(1). SB-1 instructs the Maryland Police Training and Standards Commission to prescribe "the size, placement, contrast, and legibility of identification, including requirements to ensure visibility of the identification from a reasonable distance" as well as "[t]he way identification must be displayed on different types of uniforms, outerwear, and protective clothing, including jackets, vests, and rain gear" of law enforcement officers. *Id.* § 3-207(q)(2)(iii)(1)-(2).

33. Federal, state, and local law enforcement officers (both "new and current") are also required to adhere to training mandates on "identification requirements" established by the Maryland Police Training and Standards Commission. *Id.* § 3-207(q)(2)(iii)(4).

34. Moreover, "on request of another" (*e.g.*, arrestees, protestors, or any member of the public), federal law enforcement officers are required to "verbally disclose identification while in the performance of duty in the State." *Id.* § 3-536(c)(2). The only exception to this identification requirement is if the law enforcement officer is "working in a plainclothes, nonuniformed, or undercover capacity." *Id.* § 3-536(b). Unlike the ban on facial coverings, this verbal identification requirement in SB-1 is effective immediately without the promulgation of further policies.

35. Boldly, SB-1 subjects federal officers to civil liability for non-compliance. Specifically, SB-1 provides that "[a] law enforcement officer who violates [the ban on facial coverings] is guilty of a civil offense and on conviction is subject to a fine not exceeding $1,500." *Id.* § 3-535(d)(1). Federal officers face the same civil fines for violating the identification requirements of SB-1. *Id.* § 3-536(d). Violations of either the facial covering ban or the

identification requirements also constitute "police misconduct" for purposes of Title 3 (Public Safety Article), Subtitle 1 of the Maryland Code. *Id.* §§ 3-535(d)(2), 3-536(d)(2).

36. SB-1 further provides that "[t]he State's Attorney for a county may prosecute a civil offense under [the sections covering facial coverings and identification] in the same manner as prosecution of a violation of the criminal laws of the State." *Id.* §§ 3-535(e)(10), 3-536(e)(10). SB-1 also permits the State's Attorney to "exercise authority in the same manner as prescribed by law for violation of the criminal laws of the State." *Id.* §§ 3-535(e)(11)(ii), 3-536(e)(11)(ii).

37. On July 24, 2026, Maryland's Office of the Attorney General issued an update to its *Guidance For Maryland Law Enforcement Officers On The Requirements Of Maryland Law When Working With Federal Law Enforcement Agencies*, confirming that the State of Maryland squarely intended SB-1 to target federal officers with this new state law:

> *The new statutes [created by SB-1] apply to federal agents as well*, and the statutes grant Maryland officers discretion to issue civil citations to any law enforcement officer who violates them. Once [the Maryland Police Training and Standards Commission] issues the required policies, Maryland law enforcement agencies will need to consider how to exercise this discretion.

Md. Office of the Att'y Gen., *Guidance For Maryland Law Enforcement On The Requirements of Maryland Law When Working With Federal Law Enforcement Agencies*, at 4 (July 24, 2026), https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/2026%20Update,%20Guidance%20on%20Working%20with%20Federal%20Agents%20-%20FINAL.pdf (emphasis added) (footnote omitted) (attached hereto as Exhibit E).

38. Consequently, there can be no doubt that Maryland intended to directly regulate federal law enforcement officers with SB-1 by mandating that federal law enforcement agencies comply with state uniform and identification requirements and penalizing federal officers for complying with federal laws governing their official duties that conflict with SB-1.

## III. PRINCE GEORGE'S COUNTY CODE § 18-124

39. Effective as of April 29, 2026, Prince George's Co. Code § 18-124 is a local county law that, like Maryland's SB-1, bans the wearing of facial coverings by federal, state, and local law enforcement officers within the territory of Prince George's County, Maryland and requires all law enforcement officers active within that Maryland county to provide identification when on duty. Prince George's Co. Code § 18-124.

40. Like Maryland's SB-1, there is no doubt about whether Prince George's Co. Code § 18-124 is principally aimed at restricting federal law enforcement. For example, the Committee Report accompanying Prince George's Co. Code § 18-124 made it clear that the county law was directed to federal law enforcement: "This would require ICE to follow our standards, and the State is expected to pass similar legislation." Councilmember Wanika Fisher made a similar statement when the Council later passed the law:

> People might say we're pushing the line, but the reality is the federal government doesn't care about the Constitution — they don't care about your due process rights.

*Prince George's County Leaders Approve Limits On ICE Activity, Drawing Strong Reactions*, WUSA9 News (Apr. 7, 2026), https://www.wusa9.com/article/news/politics/prince-georges-county-leaders-approve-limits-ice/65-8cddea1b-1675-40ab-ade8-562929f64e5d. A copy of this Committee Report is attached to Prince George's Co. Code § 18-124 in Exhibit C.

41. It is also clear from the language of the statute itself that Prince George's Co. Code § 18-124 is designed to reach federal law enforcement officers. Specifically, Prince George's Co. Code § 18-124(a)(1) defines the term "law enforcement agency" to include "a *federal*, state, or local agency, department, bureau, office, or unit authorized to enforce criminal, civil, or *immigration* laws in the County." *Id.* § 18-124(a)(1) (emphasis added). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency," which includes

the Federal Government. *Id.* § 18-124(a)(2). Therefore, like Maryland's SB-1, when Prince George's Co. Code § 18-124 speaks to "law enforcement officers," it speaks directly to *federal* law enforcement officers.

42. Prince George's Co. Code § 18-124 further instructs that law enforcement officers—including federal law enforcement officers—"shall not wear a face covering while interacting with a member of the public in the performance of official duties in Prince George's County," *id.* § 12-124(b)(1), except during certain limited and undefined types of operations (*e.g.*, "undercover operations" or "tactical operations") or under narrow conditions not at issue here (*e.g.*, surgical masks, fire/smoke/biological/chemical protective equipment, water rescue masks, motorcycle helmets). *Id.* § 18-124(c)(1)-(8). Section 18-124 does allow facial coverings for warmth during inclement weather. *Id.* § 18-124(c)(9).

43. Prince George's Co. Code § 18-124 also purports to require federal law enforcement officers to "display the officer's name and identification number issued by the law enforcement agency who they represent without obstruction." *Id.* § 18-124(b)(2).

44. Prince George's Co. Code § 18-124 subjects federal officers to *criminal* liability for non-compliance. Specifically, Prince George's Co. Code § 18-124 provides that "[a] law enforcement officer found in violation of this section shall be guilty of a misdemeanor and, upon conviction, subject to imprisonment not to exceed six (6) months and up to a five thousand ($5000) dollar fine." *Id.* § 18-124(d).

## IV. MONTGOMERY COUNTY CODE § 35-13E

45. Effective as of May 7, 2026, Montgomery County's "The Unmask ICE Act" is a local county law that within the territory of Montgomery County, Maryland—like Maryland's SB-1 and Prince George's Co. Code 18-124—bans the wearing of facial coverings by federal, state,

and local law enforcement officers and requires all law enforcement officers to provide identification when on duty. Montgomery Co., Md., Bill No. 5-26 (May 7, 2026).

46. Montgomery County's "The Unmask ICE Act" added § 35-13E to the Montgomery County Code and was designed to automatically sunset "upon the adoption of a uniform policy by the Maryland Police Training and Standards Commission prohibiting the use of face coverings or requiring identification for law enforcement officers, as required by [SB-1], enacted by the Maryland General Assembly on April 13, 2026." *Id.* § 3. Montgomery County Councilmember Kristin Mink explained: "The Unmask ICE Act will ensure that our residents do not have to wait months or years for the development of a statewide policy." Press Release, Montgomery Co. Council, *Montgomery County Council Unanimously Passes Amended Unmask ICE Act* (Apr. 28, 2026), https://www.montgomeryco untymd.gov/news/montgomery-county-council-unanimously-passes-amended-unmask-ice-act (statement of Councilmember Kristin Mink).

47. Despite its fixed time duration, Montgomery Co. Code § 35-13E is likewise clearly aimed at federal law enforcement, as reflected in the words of the bill's sponsor Will Jawando upon the passage of Montgomery County's "The Unmask ICE Act":

> I am proud of Montgomery County for continuing to live our values. We can and must do what we can locally to build in safeguards to protect residents from the violence and dehumanizing actions of *federal immigration enforcement* under the Trump Administration. I hope that Montgomery County's leadership will provide a model for the eventual state-wide uniform masking and identification policy.

Montgomery Co. Council Press Release, *supra* ¶ 46; *see also* Memorandum from Montgomery Co. Councilmember Will Jawando to Montgomery Co. Council (Jan. 13, 2026) (emphasis added). A copy of this memorandum is attached to Montgomery Co. Code § 35-13E in Exhibit D.

48. As if the short title of "The Unmask ICE Act" was not clear enough, it is also clear from the language of the statute itself that Montgomery Co. Code § 35-13E is designed to reach federal law enforcement officers. Specifically, Montgomery Co. Code § 35-13E defines the term

"law enforcement agency" to include "a *federal*, state, or local agency authorized to enforce criminal, civil, or *immigration* laws in the County." *Id.* § 35-13E(a) (emphasis added). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency," which includes the Federal Government. *Id.* Therefore, when Montgomery Co. Code § 35-13E speaks to "law enforcement officers," it speaks directly to *federal* law enforcement officers.

49. Montgomery Co. Code § 35-13E further instructs that law enforcement officers—including federal law enforcement officers—"must not wear a mask or facial covering while interacting with the public in the performance of their duties," except during certain limited and undefined types of operations (*e.g.*, "tactical" or "undercover operation[s]") or under narrow conditions not at issue here (*e.g.*, surgical masks, fire/smoke/biological/chemical protective equipment, water rescue masks, masks that provide warmth during inclement weather, or for other occupational health and safety reasons or reasonable workplace accommodations). *Id.* § 35-13E(b)(1)-(6).

50. Montgomery Co. Code § 35-13E also purports to require federal law enforcement officers to "wear identification on [their] outermost layer of clothing while in the performance of duty in the County." *Id.* § 35-13E(d)(1).

51. Moreover, "on request of another" (e.g., an arrestee, protestor, or any member of the public), federal law enforcement officers are required under Montgomery Co. Code § 35-13E to "verbally disclose identification while in the performance of duty in the County." *Id.* § 35-13E(d)(2). The only exception to this identification requirement is if the law enforcement officer is "working in a plainclothes, nonuniformed, or undercover capacity, or while engaged in a covert operation." *Id.* § 35-13E(h).

52. Section 35-13E provides that "[a] County police officer or member of the public who witnesses [a violation of § 35-13E] … may file a complaint through an online platform designated by the [County] Executive." *Id.* § 35-13E(e)(2). "The information submitted through the online portal may be used by the Office of the County Attorney to assist in enforcing a violation of County law under Section 1-18 and to make any appropriate referrals to third parties, including the Police Accountability Board." *Id.* § 35-13E(g).

53. Montgomery Co. Code § 35-13E contains a purported savings clause:

> *Preemption*. Nothing in this Section is to be interpreted or applied to create any requirement, power, or duty in conflict with any federal or state law.

*Id.* § 35-13E(i) (emphasis in original). However, notwithstanding this clause, Montgomery Co. Code § 35-13E still imposes a ban on facial coverings and imposes identification requirements for federal law enforcement officers and therefore constitutes unlawful regulation of the Federal Government. *See Washington*, 596 U.S. at 838.

**THE CHALLENGED LAWS ARE UNLAWFUL**

54. The Challenged Laws expressly target federal law enforcement officers in the performance of their official duties and improperly demand that federal officers comply with state and local facial covering prohibitions and identification requirements, even where compliance with the Challenged Laws conflicts with established federal laws and federal agency policies and procedures. Such state and local attempts to regulate the Federal Government under functionally identical laws in other jurisdictions (facial covering prohibitions and identification requirements) have been repeatedly rejected as unconstitutional overreach under the Supremacy Clause. *See California*, 173 F.4th at 1068; *Virginia*, 2026 WL 2411521, at *11; *City of Phila.*, 2026 WL 1906075, at *14; *New York*, 2026 WL 2225423, at *25.

55. While the Challenged Laws contain limited exceptions, they do not exclude federal officers from their scope. Moreover, although states and localities do not have authority to determine the conduct of federal law enforcement officers, including when particular federal actions are excepted from state law prohibitions, the exceptions nonetheless do not fully address instances in which the identification requirements could impede federal operations, including, for example, surveillance and plainclothes operations.

56. Due to the nature of law enforcement operations, federal law enforcement officers require flexibility to determine when to announce their identities. For example, CBP and ICE have discretion as to when they permit their officers and agents to wear facial coverings, whether to add or remove individual identifiers, and what identification is provided to members of the public upon request.[4] That is up to the federal agencies and officers based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting rules made by state or local governments. Removing this flexibility and requiring federal agencies and officers to comply with stricter Maryland state and local facial covering bans and identification requirements would undermine officer safety and operational effectiveness.

57. Denying federal agencies and officers discretion in these areas would chill federal law enforcement, threatening the safety of communities in Maryland.

58. The Challenged Laws accordingly prevent effective federal law enforcement within the State of Maryland and constitute unlawful direct regulation of the Federal Government.

[4] For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce himself and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii).

**MARYLAND'S SB-1, PRINCE GEORGE'S COUNTY CODE § 18-124, AND MONTGOMERY COUNTY CODE § 25-13E HARM THE FEDERAL GOVERNMENT AND THE PUBLIC**

59. The United States suffers a sovereign and irreparable injury from the Challenged Laws. *Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Virginia*, 2026 WL 2411521, at *14 ("It seems rather clear that being subjected to a state law that regulates an activity that is constitutionally delegated to the federal government is an infringement of the Supremacy Clause that constitutes an irreparable injury."); *see also California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Maryland's state or local governments by complying with their purported requirements for federal law enforcement officers.

60. Even beyond the sovereign injury, compliance with the Challenged Laws would endanger officers and reduce operational effectiveness by, among other things, subjecting them to standards that conflict with and differ materially from applicable federal standards and policies.

61. Federal law enforcement agents and officers cannot and will not comply with the Challenged Laws, which are unconstitutional and recklessly disregard officer safety, public safety, and federal operational needs.

62. Law enforcement historically has been a dangerous job but now is even more so. Protecting the personal identities of federal officers, and by extension their families, is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers

and agents for simply doing their jobs enforcing the laws enacted by Congress. While such threats have always existed, the volatile political environment has increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

63. For instance, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.

64. For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as, for example, ICESpy.org. Once a match is made, these individuals search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement. This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field.

65. Federal agents around the country have recently been targeted for harm, including harassment, assault, and murder. These targeted threats have expanded to include extended family members. For example, an FBI agent earlier this year was forced to abandon his FBI vehicle when a crowd of protestors rushed a group of federal law enforcement agents. The crowd subsequently vandalized the vehicle and stole the agent's personal items, including his FBI credentials and driver's license. His name and local address were subsequently posted online. The threats to the agent and his extended family, via social media and U.S. mail, have continued, necessitating the need for FBI protection measures.

66. On December 12, 2025, the spouse of an employee from the ERO Washington/Salisbury Sub-Office had her Facebook business profile doxed. The post included

specific personal identifiable information ("PII") regarding the officer's professional affiliation and made threats to the officer and spouse ("you're both going to burn in hell").

67. On August 16, 2026, an ERO Washington/Baltimore deportation officer's social media accounts were doxed online. The doxing incident listed officer's specific PII regarding the officer's professional affiliation and spouse.

68. On September 16, 2026, a deportation officer conducted surveillance in Hyattsville, Maryland attempting to apprehend an illegal alien. During that morning surveillance, an agitator who lived in an apartment unrelated to the suspect, was outside filming the officer's vehicles. While the agitator was filming, he got right up to their vehicles almost putting his phone on the windows to see inside the vehicles. The agitator filmed videos of himself berating the officers while showing the officers inside the vehicles and saying things like he was going to make sure "we" don't "get" anybody. The agitator said he would post the videos on TikTok. The officer later checked TikTok on his personal phone to see if he had, and with a simple search of "Hyattsville ICE," the two videos with ICE officers were found.

69. Another deportation officer reported a doxing incident in which an unknown subject disclosed on the officer's wife's Facebook page that she is married to an ICE agent.

70. Facial coverings can prevent agitators from identifying and tracking officers, especially those using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers (apart from, for example, surveillance, undercover, or plainclothes operations), personal identifiers carry similar risks that can allow agitators to identify and harass individual officers. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal histories or gang affiliations, transnational criminal organizations, and known or suspected terrorists.

71. Facial coverings and removal or modification of personal identifiers also prevent suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, flexibility is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. Websites that enable the widespread dissemination of officers' identities can also undermine undercover operations and plainclothes missions. *See, e.g.*, ¶ 64, *supra*.

72. Finally, the threat of enforcement for noncompliance will only further exacerbate the chilling effects of these laws. Even though the federal law enforcement agencies have made clear that they do not intend to comply with the Challenged Laws, individual officers might be chilled because they face a choice of whether to wear facial coverings or identify themselves and their agencies when it may be dangerous to themselves, others, and the operation, or face potential citations, court proceedings, and the threat of significant penalties. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law.

73. Moreover, enforcement is certainly impending: Maryland's SB-1 takes effect today, October 1, 2026, and Prince George's Co. Code § 18-124, and Montgomery Co. Code § 35-13E have already taken effect; the challenged provisions plainly apply to federal law enforcement officers and carry penalties for noncompliance; numerous officers operating within the State of Maryland routinely engage in the very conduct the Challenged Laws proscribe; and Defendants have indicated their intent to enforce these provisions against federal law enforcement.

74. The Challenged Laws also harm public safety because obstructing federal enforcement leaves dangerous individuals at large in Maryland, compromises undercover and other operations that protect the broader community against gangs and other criminal

organizations, and risks federal officers' scaling back enforcement in the State of Maryland—leaving Maryland residents with less protection than people in jurisdictions without such restrictions.

75. Bystanders near enforcement actions also face added risk when officers' identities are compelled to be disclosed in real time. More broadly, the public has an independent interest in the Federal Government's ability to carry out its enforcement functions without obstruction by Maryland state or local governments.

## **CLAIMS FOR RELIEF**

### **COUNT I**

### **VIOLATION OF THE SUPREMACY CLAUSE – MARYLAND'S SB-1 (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

76. Plaintiff hereby incorporates paragraphs 1 through 75 of the Complaint as if fully stated herein.

77. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

78. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly *or* discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)); *California*, 173 F.4th at 1067; *Virginia*, 2026 WL 2411521, at *9; *City of Phila.*, 2026 WL 1906075, at *9; *New York*, 2026 WL 2225423, at *6.

79. SB-1 purports to ban federal law enforcement officers from wearing facial coverings while performing their duties in the State of Maryland and subjects those officers to penalties for noncompliance.

80. SB-1 purports to require federal law enforcement officers to display visible identification and provide verbal identification while performing their duties in the State of Maryland and subjects those officers to penalties for noncompliance.

81. Maryland's enforcement of SB-1 against federal law enforcement officers constitutes an unlawful regulation of the Federal Government.

82. Accordingly, Maryland's SB-1 is invalid under the Supremacy Clause, and its application to the Federal Government should be enjoined.

## COUNT II

## VIOLATION OF THE SUPREMACY CLAUSE
## PRINCE GEORGE'S COUNTY CODE § 18-124
## (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

83. Plaintiff hereby incorporates paragraphs 1 through 82 of the Complaint as if fully stated herein.

84. Prince George's Co. Code § 18-124 purports to ban federal law enforcement officers from wearing facial coverings while performing their duties in Prince George's County, Maryland and subjects those officers to penalties for noncompliance.

85. Prince George's Co. Code § 18-124 purports to require federal law enforcement officers to display visible identification and provide verbal identification while performing their duties in Prince George's County, Maryland and subjects those officers to penalties for noncompliance.

86. Prince George's County's enforcement of Prince George's Co. Code § 18-124 against federal law enforcement officers constitutes an unlawful regulation of the Federal Government.

87. Accordingly, Prince George's Co. Code § 18-124 is invalid under the Supremacy Clause, and its application to the Federal Government should be enjoined.

**COUNT III**

**VIOLATION OF THE SUPREMACY CLAUSE**
**MONTGOMERY COUNTY CODE § 35-13E**
**(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

88. Plaintiff hereby incorporates paragraphs 1 through 87 of the Complaint as if fully stated herein.

89. Montgomery Co. Code § 35-13E purports to ban federal law enforcement officers from wearing facial coverings while performing their duties in Montgomery County, Maryland and subjects those officers to penalties for noncompliance.

90. Montgomery Co. Code § 35-13E purports to require federal law enforcement officers to display visible identification and provide verbal identification while performing their duties in Montgomery County, Maryland and subjects those officers to penalties for noncompliance.

91. Montgomery County's enforcement of Montgomery Co. Code § 35-13E against federal law enforcement officers constitutes an unlawful regulation of the Federal Government.

92. Accordingly, Montgomery Co. Code § 35-13E is invalid under the Supremacy Clause, and its application to the Federal Government should be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A. That this Court enter a judgment declaring that the Challenged Laws violate the Supremacy Clause and are therefore invalid as to federal law enforcement officers;

B. That this Court preliminarily and permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from implementing and enforcing the Challenged Laws against federal law enforcement officers;

C. That this Court award the United States its costs and fees in this action; and

D. That this Court award any other relief it deems just and proper.

DATED: October 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*/s/ Robert O. Lindefjeld*
Robert O. Lindefjeld
Assistant Director (DC Bar No. 44423)
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste 6400 South
Washington, D.C. 20001
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States of America*