# Ex. B

**Carolyn A. Quattrocki**
*Chief Deputy Attorney General*

**Leonard J. Howie III**
*Deputy Attorney General*

**Carrie J. Williams**
*Deputy Attorney General*

**Sharon S. Merriweather**
*Deputy Attorney General*

**Zenita Wickham Hurley**
*Deputy Attorney General*

**Peter V. Berns**
*General Counsel*

**Christian E. Barrera**
*Chief of Staff*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**

**Anthony G. Brown**
*Attorney General*

May 12, 2026

The Honorable Wes Moore
Governor of Maryland
State House, 100 State Circle
Annapolis, Maryland 21401

***RE: Senate Bill 1, "Public Safety – Law Enforcement Officers – Face Coverings and Identification"***

Dear Governor Moore:

I write to provide my assessment of the constitutionality and legal sufficiency of Senate Bill 1, entitled "Public Safety – Law Enforcement Officers – Face Coverings and Identification," as you consider whether to sign this bill. It is my view that, although this bill is legally sufficient and not clearly unconstitutional, application of the bill's requirements to federal law enforcement poses significant constitutional risk under the Supremacy Clause of the United States Constitution.[1]

Senate Bill 1 requires the Maryland Police Training and Standards Commission to develop and adopt uniform policies that prohibit the use of face coverings and require the wearing of identification on the outermost clothing by law enforcement officers in the course of duty, subject to certain exceptions specified in the bill. In addition, SB 1 provides that State, local, out-of-state, and federal law enforcement may not wear face coverings while performing their duties in the State, unless authorized by the policy. All such officers must also wear and, upon request, verbally disclose their identification consistent with the Commission's uniform policy, unless an exception applies. A law enforcement officer who violates the bill's provisions is guilty of a civil offense and subject to a fine upon conviction.

---

[1] We apply a "not clearly unconstitutional" standard of review for the bill review process. 71 *Opinions of the Attorney General* 266, 272 n.11 (1986).

In my view, there is a high likelihood that a court would find that application of SB 1's face-covering prohibition or identification requirement to federal law enforcement would violate the Supremacy Clause, and specifically, the intergovernmental immunity doctrine, because to do so would directly regulate the federal government. The Supremacy Clause states that "the Laws of the United States ... shall be the supreme Law of the Land ..., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819). The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 832, 838 (2022).

In particular, the intergovernmental immunity doctrine forbids states from (1) regulating the federal government or its employees directly unless expressly authorized by Congress, and (2) discriminating against the federal government or those with whom it deals.[2] *Id.* at 838-39. "[A] direct regulation regulates the government *qua* government; it controls how the government conducts specifically governmental functions." *United States v. California*, No. 26-926, 2026 WL 1088674, at *4 (9th Cir. Apr. 22, 2026). Such laws are void as applied to the federal government, even if the law equally regulates state operations.

Recently, the United States Court of Appeals for the Ninth Circuit granted the U.S. government's request to enjoin a similar California law, the "No Vigilantes Act,"[3] pending appeal. *Id*. at *6. The challenged portion of the No Vigilantes Act requires law enforcement, including federal law enforcement, to visibly display identification while operating within the state. *See* Cal. Penal Code § 13654. The Ninth Circuit determined that the law directly regulated the federal government and was likely unconstitutional, disagreeing with the analysis of the district court below. The Ninth Circuit explained:

---

[2] SB 1 applies to both State and federal law enforcement agencies, so it does not discriminate against the federal government in violation of the intergovernmental immunity doctrine.

[3] S.B. 805 § 1, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025).

> Section 10 of the No Vigilantes Act attempts to directly regulate the federal government in its performance of law enforcement operations. It expressly applies to federal officers. It seeks to control their conduct in performing law enforcement operations. It purports to override the federal government's power to determine whether, how, and when to publicly identify its officers. And in so doing, it aims to regulate the manner and conditions under which federal agents can enforce federal law. Thus, the state law regulates the performance of "governmental action[s]" which are "carried on by the United States itself."

*California*, 2026 WL 1088674, at *5 (internal citations omitted) (quoting *Mayo v. United States*, 319 U.S. 441, 448 (1943)). The United States also recently filed a separate lawsuit challenging New Jersey's similar "Law Enforcement Officer Protection Act" on Supremacy Clause grounds, after New Jersey's Attorney General allegedly would not assure the Department of Justice that New Jersey would not enforce its mask ban and identification requirements on federal law enforcement officers.[4]

I believe that there is a substantial risk that a reviewing court would likewise determine that SB 1 is unconstitutional as applied to federal law enforcement for the same reason. Because SB 1 applies *directly* to federal law enforcement officers, rather than contractors or federal personnel in their private capacity, and relates to the performance of their duties, it is likely to be challenged as a direct regulation of federal activity. A reviewing court would likely conclude that the Supremacy Clause provides that federal law enforcement agencies and officers carrying out their federal duties are immune from the bill's requirements and the State policies developed under SB 1.[5] But it is also possible that a court might reject an intergovernmental immunity argument if it determines that SB 1's mask and identification requirements do not actually control a law enforcement officer's federal duties or have only an incidental effect. *See, e.g.*, *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 206-08 (5th Cir. 2024) (rejecting an intergovernmental immunity defense in Texas's lawsuit to enjoin U.S. Border Patrol agents from cutting the state's wire fencing on the border because the lawsuit only "incidentally impacts" how Border Patrol carries out its duties).

---

4 *See* Complaint, *United States v. New Jersey*, No. 3:26-cv-04755 (D.N.J. April 29, 2026).

5 *See Penn Dairies v. Milk Control Comm'n of Pennsylvania*, 318 U.S. 261, 269 (1943) ("We may assume also that, in the absence of congressional consent, there is an implied constitutional immunity of the national government from state taxation *and from state regulation of the performance*, by federal officers and agencies, of governmental functions.") (emphasis added); *Mayo*, 319 U.S. at 445-47 (holding that a state could not apply fertilizer inspection fee to products bought directly by the United States since "the activities of the Federal Government are free from regulation by any state").

Aside from this issue, however, there is no constitutional obstacle to applying SB 1 to State and local law enforcement, and in the absence of binding case law, I cannot say that the bill is clearly unconstitutional. Accordingly, it may be signed into law.

Sincerely,

Anthony G. Brown

cc: The Honorable Susan C. Lee, Secretary of State
Jeremy Baker, Chief Legislative Officer
Victoria L. Gruber, Exec. Director of DLS