**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF MARYLAND, ANTHONY G. BROWN, in his official capacity as Attorney General of Maryland, MARYLAND POLICE TRAINING AND STANDARDS COMMISSION, PRINCE GEORGE'S COUNTY, MARYLAND, and MONTGOMERY COUNTY, MARYLAND,

Defendants.

Civ. No. 1:26-cv-04110-JRR

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 3

A. Governing Principles of Federal Law Enforcement ........................................ 3

B. The Challenged Maryland Laws ................................................................ 6

*1. Maryland State Law SB-1* ........................................................................ 6

*2. Prince George's County Code § 18-124* ...................................................... 9

*3. Montgomery County Code § 35-13E* ......................................................... 11

III. LEGAL STANDARDS ................................................................................ 14

IV. ARGUMENT ............................................................................................ 14

A. The United States Has Pre-Enforcement Standing ......................................... 14

B. The United States is Likely to Succeed on the Merits of its Claims ..................... 18

*1. State and Local Governments May Not Regulate the Federal Government* ........... 18

*2. The Challenged Laws Impermissibly Regulate the Federal Government* .............. 19

*3. There Is No "De Minimis" Exception to the Intergovernmental Immunity Doctrine* ... 22

*4. The Fact That the Challenged Laws Provide Exceptions Offers No Refuge* ............ 23

C. The United States Faces Irreparable Harm Absent Preliminary Relief ................... 24

D. The Balance of Hardships and Public Interest Weigh in Favor of the United States .... 28

V. CONCLUSION ........................................................................................... 30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
172 F.4th 361 (4th Cir. 2026) .......... 14

*Arizona v. California*,
283 U.S. 423 (1931) .......... 21

*Arizona v. United States*,
567 U.S. 387 (2012) .......... 5

*Ass'n of Am. Pub. v. Frosh*,
586 F. Supp. 3d 379 (D. Md. 2022) .......... 28, 29

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) .......... 15

*City of Detroit v. Murray Corp. of Am.*,
355 U.S. 489, 495 (1958) .......... 17

*Centro Tepeyac v. Montgomery County,*
722 F.3d 184 (4th Cir. 2013) .......... 28, 29

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025) .......... 2, 17, 18

*Cunningham v. Neagle*,
135 U.S. 1 (1890) .......... 21

*Dawson v. Steager*,
586 U.S. 171 (2019) .......... 22

*Genesis GSA Strategic One, LLC v. Howard County*,
__ F. Supp. 3d __, No. 26-0915, 2026 WL2294479, at *18 (D. Md. Aug. 10, 2026),
*appeal docketed*, No. 26-2172 (4th Cir. Aug. 27, 2026) .......... 19, 22

*Geo Group, Inc. v. Inslee*,
151 F.4th 1107 (9th Cir. 2025) .......... 22

*Geo Group, Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) (en banc) .......... 23

*Giovani Carandola, Ltd. v. Bason,*
303 F.3d 507 (4th Cir. 2002) .......... 28, 29

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174 (1988) .......... 18

*Hancock v. Train*,
426 U.S. 167 (1976) .......... 19

*Hughes v. Cristofane*,
486 F. Supp. 541 (D. Md. 1980) .......... 30

*Jensen v. Lane County*,
222 F.3d 570 (9th Cir. 2000) .......... 16

*Joelner v. Vill. of Wash. Park*,
378 F.3d 613 (7th Cir. 2004) .......... 24

*Johnson v. Maryland*,
254 U.S. 51 (1920) .......... 19, 21

*Kalshiex v. Johnson*,
832 F. Supp. 3d 954, 960 (D. Ariz. 2026) .......... 15

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't.*,
2 F.4th 330, 346 (4th Cir. 2021) .......... 28
*League of Women Voters of N. Carolina v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) .......... 14
*Legend Night Club v. Miller,*
637 F.3d 291 (4th Cir. 2011) .......... 28, 30
*Leslie Miller v. Arkansas*,
352 U.S. 187, 190 (1956) .......... 21
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 15
*Maryland Shall Issue, Inc. v. Hogan*,
963 F.3d 356 (4th Cir. 2020) .......... 15
*Mayo v. United States*,
319 U.S. 441 (1943) .......... 18, 30
*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) .......... 2, 18, 27
*Nken v. Holder*,
556 U.S. 418 (2009) .......... 14, 28
*North Dakota v. United States*,
495 U.S. 423 (1990) .......... 18
*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008) .......... 28
*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) .......... 3
*Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) .......... 14
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 14
*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 14
*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 14, 15
*Tennessee v. Davis*,
100 U.S. 257 (1879) .......... 3, 21
*Tweed-New Haven Airport Auth. v. Tong*,
930 F.3d 65 (2d Cir. 2019) .......... 15
*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) .......... 15, 29
*United States v. Arizona*,
641 F.3d 339 (9th Cir. 2011), *aff'd in part, rev'd in part and remanded*, 567 U.S. 387 (2012) .......... 24
*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) .......... *passim*
*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .......... 22

*United States v. California*,
819 F. Supp. 3d 1109, 1130 (C.D. Cal. 2026), *appeal docketed*, No. 26-0926 (9th Cir. Feb. 17, 2026) ........ 19
*United States v. City of Arcata*,
629 F.3d 986, 992 (9th Cir. 2010) ........ 23
*United States v. City of Philadelphia*,
__ F. Supp. 3d __, No. 26-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026)........ *passim*
*United States v. Connecticut*,
566 F. Supp. 571 (D. Conn. 1983), *aff'd without op.*, 742 F.2d 1443 (2d Cir. 1983), *aff'd without op.*, 465 U.S. 1014 (1984)........ 24, 25
*United States v. Ekblad*,
732 F.2d 562 (7th Cir. 1984)........ 15
*United States v. Fresno County*,
429 U.S. 452 (1977)........ 27
*United States v. New Mexico*,
455 U.S. 720 (1982) ........ 23
*United States v. New York*,
__ F. Supp. 3d __, No. 26-1360, 2026 WL 2225423 (N.D.N.Y. Aug. 3, 2026)........ *passim*
*United States v. Virginia*,
139 F.3d 984, 986 (4th Cir. 1998) ........ 21
*United States v. Virginia*,
__ F. Supp. 3d __, No. 26-0545, 2026 WL 2411521 (E.D. Va. Aug. 18, 2026), *appeal docketed*, No. 26-2248 (4th Cir. Sept. 14, 2026) ........ *passim*
*United States v. Washington*,
596 U.S. 832 (2022)........ *passim*
*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000)........ 15
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 129 S. Ct. 365 (2008)........ 14
*Wyandotte Transp. Co. v. United States*,
389 U.S. 191, 201 (1967)........ 15

**Constitution and Statutes**

U.S. Const. art. I § 8, cl. 4........ 5
U.S. Const. art. II § 3 ........ 3
5 U.S.C. § 301........ 5
5 U.S.C. § 5901........ 5
6 U.S.C. § 211........ 4
6 U.S.C. § 252........ 4
8 U.S.C. § 1101........ 5
8 U.S.C. § 1103(a)(2)........ 5
8 U.S.C. § 1182........ 5
8 U.S.C. §§ 1225-29a........ 5
8 U.S.C. § 1231........ 5
10 U.S.C. § 723(b)(1) ........ 5
21 U.S.C. § 801........ 4

28 U.S.C. § 509 .... 5
28 U.S.C. § 531 .... 4
29 U.S.C. § 668 .... 5

Immigration and Nationality Act of 1952 (as amended), Pub. L. 82–414, ch. 477, 66 Stat. 163 (1952) (codified at 8 U.S.C. § 1101*, et seq.*) .... 4
Md. Code Ann., Pub. Safety §§ 3-207, 3-535, 3-536 (2026)) .... *passim*
Montgomery Co., Md. Code § 35-13E (2026) .... *passim*
Prince George's Co., Md. Code § 18-124 (2026) .... *passim*
Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, *as amended* Pub. L. 93–253, § 1, Mar. 16, 1974, 88 Stat. 50 .... 4

**Rules**

Fed. R. Civ. P. 41 .... 4

**Regulations**

8 C.F.R. § 287.8(c)(2)(iii) .... 27
28 C.F.R. § 0.100-0.101 .... 4
28 C.F.R. § 0.85 .... 4

**Other Authorities**

*Bills To Limit ICE Impact Introduced In Prince George's County*, NBC Washington (Mar. 3, 2026), https://www.nbcwashington.com/news/local/prince-georges-county/bills-ice-prince-georges-county/4069783/ .... 9
Committee Report, Prince George's County Law § 18-124 .... 10, 17
Declaration of Jimmy Paul of FBI (Sept. 24, 2026) .... *passim*
Declaration of Matthew W. Allen of DEA (Sept. 28, 2026) .... *passim*
Declaration of Nikita Baker of ICE (Sept. 30, 2026) .... *passim*
Declaration of Justin Hargis of CBP (Sept. 29, 2026) .... *passim*
Hannah Gaskill, *MD Senate Passes ICE Anti-Masking Bill Despite Constitutional Questions*, The Daily Record (Feb. 3, 2026), https://thedailyrecord.com/2026/02/03/maryland-senate-ice-anti-mas king-bill/ .... 6
2 J. Story, Commentaries on the Constitution § 1099 (3d ed. 1858) .... 28
Letter from Anthony G. Brown, Att'y Gen., to Wes Moore, Gov. of Md., at 2 (May 12, 2026), https://mgaleg.maryland.gov/2026RS/ag_letters/sb0001.pdf .... 7
Md. Office of the Att'y Gen., *Guidance For Maryland Law Enforcement On The Requirements of Maryland Law When Working With Federal Law Enforcement Agencies*, at 4 (July 24, 2026),https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/2026%20Update,%20Guidance%20on%20Working%20with%20Federal%20Agents%20-%20FINAL.pdf .... 9, 17
Memorandum from Terry L. Bell, Assoc. Co. Att'y to David Murry, Council Administrator (Mar. 2, 2026) .... 10
Memorandum from Ludeen McCartney-Green to Montgomery Co. Council (Apr. 23, 2026) .... 12

Memorandum from Montgomery Co. Councilmember Will Jawando to Montgomery Co. Council (Jan. 13, 2026) ........ 10

Press Release, Montgomery Co. Council, *Montgomery County Council Unanimously Passes Amended Unmask ICE Act* (Apr. 28, 2026), https://www.montgomerycountymd.gov/news/montgomery-county-council-unanimously-passes-amended-unmask-ice-act ........ 12, 17

*Prince George's County Leaders Approve Limits On ICE Activity, Drawing Strong Reactions*, WUSA9 News (Apr. 7, 2026), https://www.wusa9.com/article/news/politics/prince-georges-count y-leaders-approve-limits-ice/65-8cddea1b-1675-40ab-ade8-562929f64e5d ........ 10

Senator Bill Ferguson, [Photo], Facebook: No Masks, No Hiding (Apr. 1, 2026), https://www.facebook.com/BillForSenate/posts/were-banning-ice-agents-from-wearing-masks-in-maryland-w ere-saying-no-to-local-co/1331019378850153/ [https://perma.cc/2PSH-6UTN] ........ 6, 17

## I. INTRODUCTION

The United States possesses sovereign authority to manage federal law enforcement activities, and under the Supremacy Clause, it need not cede that authority to any state or local government. Yet, the State of Maryland and the Maryland counties of Prince George's County and Montgomery County, through their recently enacted laws—(1) S.B. 1, 2026 Leg., ch.612, 2026 Md. Laws ___ (codified at Md. Code Ann., Pub. Safety §§ 3-207, 3-535, 3-536 (2026)), (2) Prince George's Co., Md. Code § 18-124 (2026), and (3) Montgomery Co., Md. Code § 35-13E (2026) (collectively the "Challenged Laws")[1]—seek to intrude on core federal prerogatives. Specifically, the Challenged Laws prohibit law enforcement officers, including federal law enforcement officers, from wearing facial coverings in the performance of their official duties and require those officers to display identifying information on their uniforms or provide it verbally upon request. In practice, the Challenged Laws effectively bar federal officers from conducting critical federal immigration operations within the State of Maryland and Prince George's and Montgomery Counties. Violating these laws exposes federal officers to civil and potentially criminal penalties.

The Challenged Laws purport to regulate federal officers in the execution of their official duties by imposing state and local standards governing facial coverings and identification. These provisions therefore violate the principles of intergovernmental immunity that flow from the Supremacy Clause of the U.S. Constitution. Defendants, like any state or local government, have no authority to regulate federal officers in this manner, any more than they could dictate the color of vests worn by federal law enforcement, forbid federal officers from carrying firearms, or require federal officers to recite state or local law warnings before effectuating an arrest. This has been the

[1] Copies of the Challenged Laws are attached to the Complaint respectively as Exhibits A, C, and D. *See* ECF Nos. 1-2, 1-4, and 1-5. All references to sections of the Challenged Laws herein refer to those Exhibits.

law of the land for hundreds of years. *United States v. Washington*, 596 U.S. 832, 838 (2022); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819).

Courts around the country have uniformly entered preliminary injunctions blocking functionally *identical* state and local facial mask bans and identification laws as unconstitutional direct regulations of the Federal Government. *See, e.g.*, *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026) (holding that the challenged identification requirement "purport[ed] to override the federal government's power to determine whether, how, and when to publicly identify its officers[,] ... [a]nd in so doing, it aim[ed] to regulate the manner and conditions under which federal agents can enforce federal law"); *United States v. Virginia*, __ F. Supp. 3d __, No. 26-0545, 2026 WL 2411521, at *10 (E.D. Va. Aug. 18, 2026), *appeal docketed*, No. 26-2248 (4th Cir. Sep. 14, 2026) ("The Mask/Identity Law requires that federal law enforcement officers satisfy additional requirements placed on them by Virginia—identification requirements, and masking requirements—which are not required under federal law, and which the federal authorities specifically say they need not meet. That offends the principle of intergovernmental immunity that forecloses application of the State law here."); *United States v. City of Philadelphia*, __ F. Supp. 3d __, No. 26-4208, 2026 WL 1906075, at *11 (E.D. Pa. July 2, 2026) ("Simply put, through Bill 260060, Defendants seek to directly regulate federal agents and law enforcement officers in the performance of their federal functions. Allowing the City of Philadelphia to 'do that would chang[e] totally the character of our federal system by transfer[ring] the supremacy, in fact, to' a municipality." (quoting *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 329 (3d Cir. 2025) (internal quotations omitted)); *United States v. New York*, __ F. Supp. 3d __, No. 26-1360, 2026 WL 2225423, at *16 (N.D.N.Y. Aug. 3, 2026) ("Because the Face Covering and Identification Acts take direct aim at regulating the federal agents in their function of enforcing federal law, the Court finds these provisions likely run afoul of the intergovernmental immunity doctrine."). Indeed, even

Defendants themselves openly questioned the constitutionality of the Challenged Laws but then enacted them anyway.

The United States therefore moves this Court to preliminarily enjoin Defendants and their officials from implementing and enforcing the Challenged Laws against federal law enforcement officers. The Challenged Laws violate the Supremacy Clause by purporting to regulate the uniforms and identification of federal law enforcement personnel—matters squarely within federal, not state or local, control. These constitutional injuries to federal sovereignty alone establish irreparable harm, but the harm here cuts deeper. If federal officers comply with the Challenged Laws, they face heightened risks of doxxing and harassment, and their law enforcement operations will be compromised. If they do not comply, they face citation, prosecution, and the imposition of financial penalties simply for performing their federal duties. Either path inflicts injury the United States should never have to choose between. For these reasons and the reasons that follow, this Court should grant Plaintiff's Motion for Preliminary Injunction.

## II. BACKGROUND

### A. Governing Principles of Federal Law Enforcement

The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3. The authority to discharge that duty "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Because "no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). In executing the laws, the Federal Government "can act only through [those] officers and agents," who must in turn "act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement activities necessarily take

place within the territorial boundaries of state and local governments, including the State of Maryland and Prince George's and Montgomery Counties.

Federal law enforcement agencies, including those within the Departments of Justice ("DOJ") and Homeland Security ("DHS"), are created by federal law. *See, e.g.*, 28 U.S.C. § 531 (Federal Bureau of Investigation ("FBI")), *id.* § 561 (U.S. Marshals Service), *id.* § 599A (Bureau of Alcohol, Tobacco, Firearms and Explosives); 6 U.S.C. § 252 (U.S. Immigration and Customs Enforcement ("ICE")); 6 U.S.C. § 211 (U.S. Customs and Border Protection ("CBP")); Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, *as amended* Pub. L. 93–253, § 1, Mar. 16, 1974, 88 Stat. 50 (Drug Enforcement Administration ("DEA")). All law enforcement officers within these agencies have the power to swear out and execute search warrants based upon probable cause. Fed. R. Civ. P. 41. Different law enforcement agencies within the Federal Government have different, but sometimes overlapping, authorities for the types of crimes and offenses they investigate and prosecute.

For example, the DEA enforces the Nation's controlled-substances laws. *See generally* 21 U.S.C. § 801, *et seq*. In carrying out that mission, the DEA investigates and aids in the prosecution of violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100-0.101. Similarly, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. *See id.* § 0.85. It conducts extensive operations throughout the country and in partnership with federal, state, local, and foreign officials.

DHS and its component agencies ICE and CBP are primarily responsible for enforcing the nation's immigration laws. Those laws are primarily contained in the Immigration and Nationality Act of 1952 (as amended), Pub. L. 82–414, ch. 477, 66 Stat. 163 (1952) (codified at 8 U.S.C.

§ 1101*, et seq.*) ("INA"), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status." *See Arizona v. United States*, 567 U.S. 387, 395 (2012). The INA gives the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225-29a, 1231.

To achieve the goals outlined above, the head of each agency has the power to govern the agency's affairs and direct its agents' activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (authorizing the DHS Secretary to "control, direct[], and supervis[e]" all DHS employees). Included within that power to govern the agencies is the power to determine how agents perform their official duties in accordance with federal law. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment in that performance. *See, e.g.*, 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 10 U.S.C. § 723(b)(1) (providing identification exception to individuals who "do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties").

## B. The Challenged Maryland Laws

### *1. Maryland State Law SB-1*

Senate Bill 1 ("SB-1"), introduced in the Maryland General Assembly on January 14, 2026, bans facial coverings for federal officers and requires them to provide identification when on duty within the State. *See* S.B. 1, 2026 Gen. Assem., Reg. Sess. (Md. 2026). Maryland Senate President Bill Ferguson made it clear that the legislation aims to regulate federal law enforcement and acknowledged that Maryland's SB-1 was a direct challenge to the Supremacy Clause:

> We believe in trust between law enforcement and the people they serve. … What we are seeing by ICE in Maryland and across the country is abhorrent to Maryland values. … The real question is: Does the Supremacy Clause outweigh federalism, and, particularly in a space when it is about a federal agency not having a policy, does state law trump — no pun intended. … Fundamentally, I think state's rights matter, and I think that's what will prevail.

Hannah Gaskill, *MD Senate Passes ICE Anti-Masking Bill Despite Constitutional Questions*, The Daily Record (Feb. 3, 2026), https://thedailyrecord.com/2026/02/03/maryland-senate-ice-anti-masking-bill/. Senator Ferguson also emphasized the applicability of SB-1 to federal law enforcement by posting on his official legislative Facebook page a photo titled "No Masks, No Hiding" that depicted three law enforcement officers wearing facial coverings, along with the following text:

> *We're banning ICE agents from wearing masks in Maryland.*
>
> We're saying no to local cooperation with unchecked and unconstitutional immigration enforcement.
>
> Our neighbors deserve transparency and dignity.

Senator Bill Ferguson, [Photo], Facebook: No Masks, No Hiding (Apr. 1, 2026), https://www.facebook.com/BillForSenate/posts/were-banning-ice-agents-from-wearing-masks-in-maryland-were-saying-no-to-local-co/1331019378850153/ [https://perma.cc/2PSH-6UTN] (emphasis added).

The applicability of Maryland's SB-1 to federal law enforcement prompted concerns from the Attorney General of Maryland about the new law's legality:

> In my view, there is a high likelihood that a court would find that application of SB 1's face-covering prohibition or identification requirement to federal law enforcement would violate the Supremacy Clause, and specifically, the intergovernmental immunity doctrine, because to do so would directly regulate the federal government.

Letter from Anthony G. Brown, Att'y Gen., to Wes Moore, Gov. of Md., at 2 (May 12, 2026), https://mgaleg.maryland.gov/2026RS/ag_letters/sb0001.pdf.[2] Despite these concerns, Maryland Governor Wes Moore signed SB-1 into law on May 26, 2026.

Effective October 1, 2026, and codified at Md. Code Ann., Pub. Safety §§ 3-207, 3-535, 3-536 (2026), SB-1 defines the term "law enforcement agency" to include "a law enforcement agency of … *the federal government*." *Id.* § 3-535(a)(3) (2026) (emphasis added); *see also id.* § 3-536(a)(3) ("'Law enforcement agency' has the meaning stated in § 3-535 of this subtitle."). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency." *Id.* §§ 3-535(a)(4), 3-536(a)(4). Therefore, when SB-1 speaks to "law enforcement officers," it speaks directly to *federal* law enforcement officers.

SB-1 commands that federal law enforcement officers "may not wear a face covering while in the performance of duty in the State, except as authorized in the uniform policy adopted by the Maryland Police Training and Standards Commission," or during certain limited and undefined types of operations (*e.g.*, "undercover operation[s]") or conditions such as wearing translucent shields or gas masks as part of riot gear, surgical masks, scuba diving masks, motorcycle helmets, eyewear to protect against lasers, or religious headdresses, etc. *Id.* § 3-535(c).

In addition to the ban on facial coverings, SB-1 further requires federal law enforcement officers to "wear identification on [their] outermost lawyer of clothing while in the performance of duty in the state." *Id.* § 3-536(c)(1). SB-1 directs the Maryland Police Training and Standards

[2] A copy of this letter is attached to the Complaint as Exhibit B. *See* ECF No. 1-3.

Commission to prescribe "the size, placement, contrast, and legibility of identification, including requirements to ensure visibility of the identification from a reasonable distance" as well as "[t]he way identification must be displayed on different types of uniforms, outerwear, and protective clothing, including jackets, vests, and rain gear" of law enforcement officers. *Id.* § 3-207(q)(2)(iii)(1)-(2). Federal, state, and local law enforcement officers (both "new and current") are also required to adhere to training mandates on "identification requirements" that will be established by the Maryland Police Training and Standards Commission. *Id.* § 3-207(q)(2)(iii)(4). Finally, "on request of another" (including arrestees, protestors, or any member of the public), federal law enforcement officers are required to "verbally disclose identification while in the performance of duty in the State." *Id.* § 3-536(c)(2). The only exception to this identification requirement is if the law enforcement officer is "working in a plainclothes, nonuniformed, or undercover capacity." *Id.* § 3-536(b). This verbal identification requirement does not depend upon the promulgation of further policies by the Maryland Police Training and Standards Commission.

SB-1 subjects federal officers to civil liability for non-compliance. Specifically, SB-1 provides that "[a] law enforcement officer who violates [the ban on facial coverings] is guilty of a civil offense and on conviction is subject to a fine not exceeding $1,500." *Id.* § 3-535(d)(1). Federal officers face the same civil fines for violating the identification requirements of SB-1. *Id.* § 3-536(d). Violations of either the facial covering ban or the identification requirements also constitute "police misconduct" for purposes of Title 3 (Public Safety Article), Subtitle 1 of the Maryland Code. *Id.* §§ 3-535(d)(2), 3-536(d)(2). SB-1 further provides that "[t]he State's Attorney for a county may prosecute a civil offense under [the sections covering facial coverings and identification] in the same manner as prosecution of a violation of the criminal laws of the State." *Id.* §§ 3-535(e)(10), 3-536(e)(10). SB-1 also permits the State's Attorney to "exercise authority in

the same manner as prescribed by law for violation of the criminal laws of the State." *Id.* §§ 3-535(e)(11)(ii), 3-536(e)(11)(ii).

On July 24, 2026, Maryland's Office of the Attorney General issued an update to its *Guidance For Maryland Law Enforcement Officers On The Requirements Of Maryland Law When Working With Federal Law Enforcement Agencies*, reaffirming that SB-1 reaches federal officers:

> *The new statutes [created by SB-1] apply to federal agents as well*, and the statutes grant Maryland officers discretion to issue civil citations to any law enforcement officer who violates them. Once [the Maryland Police Training and Standards Commission] issues the required policies, Maryland law enforcement agencies will need to consider how to exercise this discretion.

Md. Office of the Att'y Gen., *Guidance For Maryland Law Enforcement On The Requirements of Maryland Law When Working With Federal Law Enforcement Agencies*, at 4 (July 24, 2026), https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/2026%20Update,%20Guidance%20on%20Working%20with%20Federal%20Agents%20-%20FINAL.pdf (emphasis added) (footnote omitted) (hereafter referred to as "Updated Guidance").[3]

### *2. Prince George's County Code § 18-124*

Not to be outdone by the Maryland state legislature, Prince George's County introduced a similar law on March 17, 2026, banning facial coverings for law enforcement officers and requiring them to display identification when on duty within the county. Prince George's Co., Md. Code § 18-124 (2026). In the public press conference held to announce the introduction of its "emergency bill," Prince George's County Council Chair Krystal Oriadha explained, "ICE and their terrorist tactics have no place in Prince George's County."[4] This sentiment was later

---

[3] A copy of the Maryland Attorney General's Updated Guidance is attached to the Complaint at Exhibit E. *See* ECF No. 1-6.

[4] *Bills To Limit ICE Impact Introduced In Prince George's County*, NBC Washington (Mar. 3, 2026), https://www.nbcwashington.com/news/local/prince-georges-county/bills-ice-prince-georges-county/4069783/.

reinforced in the Committee Report accompanying Prince George's Co. Code § 18-124, which made it clear that the county law was directed to federal law enforcement: "This would require ICE to follow our standards, and the State is expected to pass similar legislation."[5]

Like the Maryland Attorney General's concerns about the constitutionality of SB-1, Prince George's County's legal counsel similarly questioned Prince George's Co. Code § 18-124's legality:

> [T]he legal impediment to the enactment of [Prince George's Co. Code § 18-124] is the County's lack of legal authority to require ICE agents to refrain from wearing facial coverings. … The official declaration that constitutes a public health emergency could be viewed by a court as the County's attempt to regulate an area where only the federal government has the ability to regulate in violation of the Constitution's Supremacy Clause.

Memorandum from Terry L. Bell, Assoc. Co. Att'y to David Murry, Council Administrator, at 2-3 (Mar. 2, 2026).[6] Councilmember Wanika Fisher made a similar statement at the time:

> People might say we're pushing the line, but the reality is the federal government doesn't care about the Constitution — they don't care about your due process rights.

*Prince George's County Leaders Approve Limits On ICE Activity, Drawing Strong Reactions*, WUSA9 News (Apr. 7, 2026), https://www.wusa9.com/article/news/politics/prince-georges-county-leaders-approve-limits-ice/65-8cddea1b-1675-40ab-ade8-562929f64e5d. Notwithstanding the concern about "pushing the line" on the Supremacy Clause, Prince George's County Council passed the new law unanimously on April 29, 2026, and it became effective on that date.

Like Maryland's SB-1, Prince George's Co. Code § 18-124 provides that law enforcement officers "shall not wear a face covering while interacting with a member of the public in the

[5] A copy of this Committee Report is attached to Prince George's Co. Code § 18-124 in Exhibit C of the Complaint. *See* ECF No. 1-4.
[6] A copy of this memorandum is attached to Prince George's Co. Code § 18-124 in Exhibit C of the Complaint. *See* ECF No. 1-4.

performance of official duties in Prince George's County," *id.* § 12-124(b)(1), except during certain limited and undefined types of operations (*e.g.*, "undercover operations" or "tactical operations") or under conditions such as surgical masks, fire/smoke/biological/chemical protective equipment, water rescue masks, or motorcycle helmets or for warmth during inclement weather. *Id.* § 18-124(c)(1)-(9). Prince George's Co. Code § 18-124 also requires federal law enforcement officers to "display the officer's name and identification number issued by the law enforcement agency who they represent without obstruction." *Id.* § 18-124(b)(2).

Prince George's Co. Code § 18-124(a)(1) defines the term "law enforcement agency" to include "a *federal*, state, or local agency, department, bureau, office, or unit authorized to enforce criminal, civil, or *immigration* laws in the County." *Id.* § 18-124(a)(1) (emphasis added). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency." *Id.* § 18-124(a)(2). Therefore, like Maryland's SB-1, when Prince George's Co. Code § 18-124 speaks to "law enforcement officers," it speaks directly to *federal* law enforcement officers. Federal officers who violate these provisions face potential criminal liability, including possible imprisonment up to six months and fines up to $5,000. *Id.* § 18-124(d).

***3. Montgomery County Code § 35-13E***

Montgomery County introduced its "Unmask ICE Act" on January 20, 2026, banning the wearing of facial coverings by federal law enforcement officers and requiring them to provide identification. Montgomery Co., Md. Code § 35-13E (2026). But unlike Prince George's Co. § 18-124, Montgomery County's law is intended as a stopgap pending "the adoption of a uniform policy by the Maryland Police Training and Standards Commission prohibiting [statewide] the use of face coverings or requiring identification for law enforcement officers, as required by [SB-1], enacted by the Maryland General Assembly on April 13, 2026." *Id.* § 3. Montgomery County Councilmember Kristin Mink explained in a press release during the pendency of the proposed

county law why its interim law was needed: "The Unmask ICE Act will ensure that our residents do not have to wait months or years for the development of a statewide policy." Press Release, Montgomery Co. Council, *Montgomery County Council Unanimously Passes Amended Unmask ICE Act* (Apr. 28, 2026), https://www.montgomerycountymd.gov/news/ montgomery-county-council-unanimously-passes-amended-unmask-ice-act (statement of Kristin Mink). In that same press release, the bill's sponsor, Councilmember Will Jawando, emphasized that the "Unmask ICE Act" was intended to target federal law enforcement:

> I am proud of Montgomery County for continuing to live our values. We can and must do what we can locally to build in safeguards to protect residents from the violence and dehumanizing actions of *federal immigration enforcement* under the Trump Administration. I hope that Montgomery County's leadership will provide a model for the eventual state-wide uniform masking and identification policy.

*Id.* (statement of Will Jawando) (emphasis added); *see also* Memorandum from Montgomery Co. Councilmember Will Jawando to Montgomery Co. Council (Jan. 13, 2026).[7]

Like the state and local government lawyers who openly questioned the constitutionality of Maryland's SB-1 and Prince George's Co. Code § 18-124, Montgomery County's legislative attorney considered it "uncertain whether the County could enforce [Montgomery Co. Code § 35-13E] due to ongoing legal battles over the constitutionality of state and local mask bans." Memorandum from Ludeen McCartney-Green to Montgomery Co. Council, at 2 (Apr. 23, 2026).[8] Notwithstanding this uncertainty, the Montgomery County Council unanimously passed its "Unmask ICE Act," and the new law became effective on May 7, 2026, adding § 35-13E to the Montgomery County Code.

[7] A copy of this memorandum is attached to Montgomery Co. Code § 35-13E in Exhibit D of the Complaint. *See* ECF No. 1-5.

[8] A copy of this memorandum is attached to Montgomery Co. Code § 35-13E in Exhibit D of the Complaint. *See* ECF No. 1-5.

Montgomery Co. Code § 35-13E similarly provides that law enforcement officers "must not wear a mask or facial covering while interacting with the public in the performance of their duties," except during certain limited and undefined types of operations (*e.g.*, "tactical" or "undercover operation[s]") or under conditions such as surgical masks, fire/smoke/biological/ chemical protective equipment, water rescue masks, masks that provide warmth during inclement weather, or for other occupational health and safety reasons or reasonable workplace accommodations. *Id.* § 35-13E(b)(1)-(6). Montgomery Co. Code § 35-13E also requires that law enforcement officers "wear identification on [their] outermost layer of clothing while in the performance of duty in the County." *Id.* § 35-13E(d)(1). Moreover, "on request of another" (*e.g.*, an arrestee, protestor, or any member of the public), law enforcement officers are required under Montgomery Co. Code § 35-13E to "verbally disclose identification while in the performance of duty in the County." *Id.* § 35-13E(d)(2). The only exception to this identification requirement is if the County considers the law enforcement officer to be "working in a plainclothes, nonuniformed, or undercover capacity, or while engaged in a covert operation." *Id.* § 35-13E(h).

Montgomery Co. Code § 35-13E defines the term "law enforcement agency" to include "a *federal*, state, or local agency authorized to enforce criminal, civil, or *immigration* laws in the County." *Id.* § 35-13E(a) (emphasis added). And the term "law enforcement officer" is defined as "a sworn member of a law enforcement agency." *Id.* Therefore, when Montgomery Co. Code § 35-13E speaks to "law enforcement officers," Montgomery County's new law speaks directly to *federal* law enforcement officers.

Finally, Section 35-13E provides that "[a] County police officer or member of the public who witnesses [a violation of § 35-13E] … may file a complaint through an online platform designated by the [County] Executive." *Id.* § 35-13E(e)(2). "The information submitted through the online portal may be used by the Office of the County Attorney to assist in enforcing a violation

of County law under Section 1-18 and to make any appropriate referrals to third parties, including the Police Accountability Board." *Id.* § 35-13E(g).

## III. LEGAL STANDARDS

A preliminary injunction may be granted if the plaintiff establishes (1) "[it] is likely to succeed on the merits," (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 366 (4th Cir. 2026). Where, as here, the Federal Government is a party to the suit, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In general, where the United States has demonstrated a likelihood of success on the merits of a Supremacy Clause claim, the other factors also favor a preliminary injunction. *See, e.g.*, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

A prohibitive preliminary injunction is designed to maintain the status quo ante until a final decision on the merits of the litigation can be entered. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The status quo ante is "the last uncontested status between the parties which preceded the controversy." *Id.* (citation omitted).

## IV. ARGUMENT

### A. The United States Has Pre-Enforcement Standing

Article III standing requires a plaintiff to demonstrate a concrete injury that is fairly traceable to the conduct of the defendant and judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "When an individual is subject to" threatened enforcement of a law, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, that requirement is satisfied where the plaintiff alleges "an intention to engage

in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 363 (4th Cir. 2020). Further, "the [traceability] requirement is met" where "a plaintiff is threatened by the enforcement of a statute that specifically targets the plaintiff." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).

The United States easily satisfies these requirements. First, the United States asserts "an intention to engage in a course of conduct arguably affected with a constitutional interest," namely, to act through its officers in accordance with its own policies and with federal law, although proscribed by the Challenged Laws. *See Driehaus*, 573 U.S. at 159 (citation omitted). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Defendants by complying with their purported requirements for federal law enforcement officers. Indeed, Defendants' attempt to regulate the conduct of the Federal Government itself inflicts a "sovereign injury" on the United States. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2021) (United States has standing to sue "when its valid laws in a domain of federal authority are undermined by impermissible state regulations."); *Kalshiex v. Johnson*, 832 F. Supp. 3d 954, 960 (D. Ariz. 2026) ("The federal government 'may sue to protect its interests,' and that authority extends to suits seeking to enjoin the enforcement of preempted state law.") (quoting *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967)).

Moreover, compliance with the Challenged Laws would endanger officers and reduce operational effectiveness by, among other things, subjecting federal law enforcement officers to adhere to standards that may conflict with and differ materially from applicable federal standards and policies. To be clear, the Federal Government will not comply with these Challenged Laws. *See* Paul Decl.[9] ¶ 18; Allen Decl.[10] ¶ 26; Baker Decl.[11] ¶ 50. As a result, federal law enforcement officers face a catch-22 situation, forcing them to choose between following state and local laws that may conflict with federal law and policy or following federal law and policy while risking liability and substantial penalties for their noncompliance with state and local law. That creates a chilling effect for federal law enforcement officers and constitutes a serious and concrete harm which the Federal Government seeks to redress through this pre-enforcement challenge.

The Challenged Laws also discourage federal officers from taking prudent safety measures necessary to protect their health, well-being, identities, and families, which generally undermines the efficacy of federal law enforcement operations and the continued recruitment and retention of a talented law enforcement workforce. *See* Paul Decl. ¶¶ 12-17; Allen Decl. ¶¶ 18-21; Baker Decl. ¶¶ 29, 40, 41; Hargis Decl.[12] ¶¶ 20-21. Thus, the Challenged Laws threaten the strong federal interest in "serv[ing] the public good by zealous enforcement of the law and the avoidance of deterring talented candidates from entering [and remaining in] government employment for fear of liability." *Jensen v. Lane County*, 222 F.3d 570, 576 (9th Cir. 2000).

---

[9] "Paul Decl." refers to the September 24, 2026, declaration of Jimmy Paul of the FBI, filed with this Motion. *See* ECF No. 2-3.

[10] "Allen Decl." refers to the September 28, 2026, declaration of Matthew W. Allen of the DEA, filed with this Motion. *See* ECF No. 2-4.

[11] "Baker Decl." refers to the September 30, 2026, declaration of Nikita Baker of ICE, filed with this Motion. *See* ECF No. 2-5.

[12] "Hargis Decl." refers to the September 29, 2026, declaration of Justin Hargis of CBP, filed with this Motion. *See* ECF No. 2-6.

In this respect, the Challenged Laws present a situation that is far worse than the situation faced by the Third Circuit last year in *CoreCivic*. In *CoreCivic*, the court of appeals observed that the challenged law in that case was "an 'effort to hamstring [the federal government's immigration] power,' making it as hard as possible for it to hold aliens in the New Jersey." *CoreCivic*, 145 F.4th at 328 (alteration in original) (quoting *City of Detroit v. Murray Corp. of Am.*, 355 U.S. 489, 495 (1958)). Here, Maryland officials share the same goal of attempting to hamstring the Federal Government's immigration efforts based on the public statements made by officials in connection with the enactments of the Challenged Laws. However, unlike the situation in *CoreCivic*, the Challenged Laws endanger the safety of federal law enforcement officers and their families and, in that respect, are not mere impediments to federal immigration enforcement. The Challenged Laws also regulate federal officers' uniforms and identification in the performance of their official law enforcement duties, including when and how to make arrests. The Challenged Laws in Maryland, then, have a greater and potentially more dire consequence than the law ruled unconstitutional in *CoreCivic*. The question of constitutionality here is not even a close one.

The United States also faces a credible threat of imminent enforcement, satisfying Article III's standing requirements. Defendants have maintained from the outset that they intend to enforce the Challenged Laws against federal law enforcement; indeed, targeting federal law enforcement in the performance of their official duties was the principal purpose of their enactments. *See, e.g.*, Photo, *supra* page 6; Updated Guidance, *supra* page 9; Committee Report, *supra* page 10, and Press Release, *supra* page 12. Because Defendants have refused to disavow the application of these laws, the Federal Government is not required to await enforcement—and the attendant disruption of official federal duties—before seeking judicial relief.

**B. The United States is Likely to Succeed on the Merits of its Claims**

The United States is highly likely to succeed on the merits because the Challenged Laws violate core tenets of the Supremacy Clause. Under longstanding Supremacy Clause jurisprudence, states and localities lack the authority to regulate or control the operations of the Federal Government. The Challenged Laws directly infringe upon this intergovernmental immunity by banning facial coverings that are permissible by federal policy and by mandating identity disclosures that compromise federal officer safety, the safety of their families, and the operational effectiveness of the federal agencies that employ these federal officers. Because these laws directly conflict with federal directives—a constitutional infirmity openly acknowledged by Defendants' own stated legality concerns—they are invalid under the Supremacy Clause.

*1. State and Local Governments May Not Regulate the Federal Government*

The law is clear. Under the Supremacy Clause, States have "no power" to "in any manner control[] the operations of" the Federal Government. *McCulloch*, 17 U.S. at 436; *Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state."). The intergovernmental immunity doctrine encapsulates this principle. *Washington*, 596 U.S. at 838 (stating that the Supremacy Clause "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government . . . .'"). A state or local law violates intergovernmental immunity if it "regulates the United States directly," *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion), "unless Congress provides 'clear and unambiguous' authorization for such regulation," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 175 (1988) (citation omitted).

Furthermore, "intergovernmental immunity . . . forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *California*, 173 F.4th at 1068; *see CoreCivic*, 145 F.4th at 321 (stating that a

state law unlawfully regulates the United States when it "'places [either] a prohibition' or mandate on the federal government") (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976))). "A direct regulation is one that 'lays hold of' federal officers 'in their specific attempt to obey orders and requires qualifications in addition to those that the [Federal] Government has pronounced sufficient.'" *California*, 173 F.4th at 1067 (quoting *Johnson v. Maryland*, 254 U.S. 51, 57 (1920)).

For instance, in *Johnson*, the Supreme Court held that a state could not require a Post Office employee to obtain a driver's license from the state, explaining that the state may not "require[] qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Johnson*, 254 U.S. at 57. In *Hancock*, the Supreme Court similarly concluded that a state could not forbid federal facilities from operating without a state pollution permit, as such a requirement improperly "place[d] a prohibition on the Federal Government." *Hancock*, 426 U.S. at 179-80 (quotation marks omitted); *see also Genesis GSA Strategic One, LLC v. Howard County*, __ F. Supp. 3d __, No. 26-0915, 2026 WL2294479, at *18 (D. Md. Aug. 10, 2026), *appeal docketed*, No. 26-2172 (4th Cir. Aug. 27, 2026) ("[A] state law does violate the direct regulation principle when it 'places a prohibition on the Federal Government.'" (quoting *Hancock*, 426 U.S. at 180)).

*2. The Challenged Laws Impermissibly Regulate the Federal Government*

Despite this clear and longstanding precedent, Defendants seek to impose state and local mandates directly on federal law enforcement officers carrying out their official duties within the State of Maryland. Courts examining laws functionally *identical* to the ones at issue here—laws prohibiting facial coverings by federal law enforcement officers or requiring them to provide identification—have preliminarily enjoined such laws. *California*, 173 F.4th at 1068;[13] *Virginia*,

[13] In *United States v. California*, 819 F. Supp. 3d 1109, 1130 (C.D. Cal. 2026), *appeal docketed*, No. 26-0926 (9th Cir. Feb. 17, 2026), the district court initially denied the Federal Government's motion for preliminary injunction, concluding that the United States was not likely to succeed on

2026 WL 2411521, at *15; *City of Philadelphia*, 2026 WL 1906075, at *11; *New York*, 2026 WL 2225423, at *16. Indeed, the Fourth Circuit recently denied a stay pending appeal sought by Virginia after the court entered a preliminary injunction blocking enforcement of that state's functionally identical facial covering ban and identification requirements for federal law enforcement officers.[14] While not dispositive, these cases provide strong persuasive authority.

As in *California*, *Virginia*, *City of Philadelphia*, and *New York*, each of the Challenged Laws here purports to require that no federal law enforcement officer may wear a face covering while interacting with the public in the performance of their *official* duties (not their personal capacities), except during extreme weather and certain limited types of operations. Md. Code. Ann., Pub. Safety § 3-535(c); Prince George's Co. Code § 18-124(b)(1); Montgomery Co. Code § 35-13E(b). They also purport to require federal law enforcement officers to display identification information on their uniforms. Md. Code. Ann., Pub. Safety § 3-536(c)(1); Prince George's Co. Code § 18-124(b)(2); Montgomery Co. Code § 35-13E(d). And each of the Challenged Laws subjects federal officers to significant liability for non-compliance. Md. Code. Ann., Pub. Safety §§ 3-535(d), 3-536(d); Prince George's Co. Code § 18-124(d); Montgomery Co. Code § 35-13E(g). The Challenged Laws therefore directly regulate federal officers in the course of their federal duties by demanding compliance with uniform and identification requirements and penalizing those officers even when they are complying with federal laws.

---

the merits. However, on appeal to the Ninth Circuit, the court of appeals disagreed with the district court and entered an injunction pending appeal after concluding that the Plaintiff United States *was* likely to succeed on the merits, stating: "The district court asked the wrong question. By looking to the degree [the challenged statutes] interfered with the activities of the United States, the district court applied a standard pertaining to States' regulation of federal contractors and third-party employers, not the standard applicable to direct regulation of governmental activities of the United States." *California*, 173 F.4th at 1068 (citations omitted). That was the only court to rule against the United States and its position was quickly rejected by a unanimous appeals court.

[14] *See United States v. Virginia*, No. 26-1874 (4th Cir. Sept. 3, 2026) (order denying stay). At the Fourth Circuit, Appeal No. 26-1874 has been consolidated with Appeal No. 26-2248.

Controlling precedent in the Fourth Circuit has denounced state and local efforts to impose obligations on federal employees in addition to requirements their federal agencies found sufficient. For example, in *United States v. Virginia*, 139 F.3d 984, 986 (4th Cir. 1998), the Fourth Circuit examined a state law that attempted to impose a hiring requirement on the FBI beyond the requirement that had been already set by the FBI. The court of appeals held that the state law was unconstitutional as an improper regulation of the Federal Government because the state requirement did "not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Id.* at 988 (quoting *Leslie Miller v. Arkansas*, 352 U.S. 187, 190 (1956)). That reasoning applies directly to the Challenged Laws here, because each "requires that federal law enforcement officers satisfy additional requirements placed on them by [Defendants]—identification requirements, and masking requirements—which are not required under federal law, and which the federal authorities specifically say they need not meet. That offends the principle of intergovernmental immunity that forecloses application of the State law here." *Virginia*, 2026 WL 2411521, at *10.

Federal law enforcement agencies are not required to comply with individual state and local laws when operating within the scope of their official duties. *See, e.g.*, *Johnson*, 254 U.S. at 57; *Arizona v. California*, 283 U.S. 423, 451 (1931) ("The United States may perform its functions without conforming to the police regulations of a state."); *Davis*, 100 U.S. at 262-63 ("If, when . . . acting . . . within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State . . . the operations of the general government may at any time be arrested at the will of one of its members."); *Cunningham v. Neagle*, 135 U.S. 1, 75 (1890) ("[I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to

do as marshal of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under . . . [state] law."). Under the controlling reasoning of the Fourth Circuit's *Virginia* decision, then, Defendants' attempts to "lay hold of" federal law enforcement officers cannot be squared with the Supremacy Clause.

*3. There Is No "De Minimis" Exception to the Intergovernmental Immunity Doctrine*

To the extent Defendants might argue that the obligations of the Challenged Laws merely impose an incidental or "*de minimis*" burden on federal law enforcement officers, "Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) (citing *Dawson v. Steager*, 586 U.S. 171 (2019)); *Geo Group, Inc. v. Inslee*, 151 F.4th 1107, 1121 (9th Cir. 2025) (same); *California*, 173 F.4th at 1067 ("[I]f a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations.")); *cf. Genesis GSA Strategic One, LLC*, 2026 WL2294479, at *19 (Maryland district court noting that "'*[a]ny* economic burden that is discriminatorily imposed on the federal government is unlawful'; there is no 'de minimis exception' to the discrimination intergovernmental immunity doctrine." (emphasis in original)). The Challenged Laws, therefore, constitute unconstitutional and burdensome regulations on the Federal Government. *See California*, 173 F.4th at 1067-68 (holding state law invalid because it "purports to override the federal government's power to determine whether, how, and when to publicly identify its officers" and thus "directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority*" (emphasis in original)).[15]

[15] There have been cases that have applied the incidental burden test to federal contractors, but those cases hold that contractors have narrower immunity than the Federal Government itself:

#### 4. *The Fact That the Challenged Laws Provide Exceptions Offers No Refuge*

The exceptions provided in the Challenged Laws actually confirm rather than cure their constitutional defects. Defendants cannot, for example, point to the exception for "undercover operations" as evidence that the law leaves federal law enforcement unimpeded. It does not. The exceptions are narrow, ill-defined, and do nothing to address the many circumstances in which the Federal Government has independently determined that non-disclosure or delayed disclosure of an officer's identity are operationally necessary—for example, in surveillance and plainclothes operations, as well as other sensitive law enforcement activities that do not fit neatly within the exceptions of the Challenged Laws. The exceptions offer no real refuge. Indeed, they implicitly acknowledge when to mask or remove identifiers is a policy choice; the Challenged Laws simply substitute Defendants' own judgment for the Federal Government's operations, which is precisely the kind of local override of federal operational judgment the Supremacy Clause forecloses.[16]

In sum, by dictating when federal officers may wear facial coverings and what identification they must display or provide while carrying out their official duties, the Challenged

---

> Private contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself.

*Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (en banc) (citing *United States v. New Mexico*, 455 U.S. 720, 733–34 (1982)). It would make no sense for the incidental burden test to apply to the Federal Government itself, because doing so would collapse the distinction between contractors and direct regulations of the Federal Government. Indeed, in *United States v. City of Arcata*, 629 F.3d 986, 992 (9th Cir. 2010), the challenged ordinance was held to be unconstitutional even though it was no more restrictive than federal law. That law would surely be incidental, and yet, it was still unconstitutional because states and localities have no role in subjecting federal officers to state procedures and punishments in the performance of their duties. That is exactly what the Challenged Laws do here, except they try to impose liability for actions that federal agencies have determined are permissible.

[16] For example, federal law enforcement officers have legitimate concerns about photos of their faces and their identities being posted online. Baker Decl. ¶ 40. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, including gang affiliations, or who are associates or members of transnational criminal organizations or known or suspected terrorists or human rights violators. *Id.*

Laws improperly seek to regulate how the Federal Government carries out its law enforcement functions in the State of Maryland. For these reasons, Plaintiff United States is likely to succeed on the merits.

**C. The United States Faces Irreparable Harm Absent Preliminary Relief**

The United States will suffer irreparable harm if the Challenged Laws are enforced against the Federal Government. Irreparable harm necessarily results from the enforcement of a state or local law that violates the Supremacy Clause. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 366-67 (1989) (noting that irreparable injury may be established "by a showing that the challenged state statute is flagrantly and patently violative of . . . the express constitutional prescription of the Supremacy Clause" (citation omitted)); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm based on a Supremacy Clause violation), *aff'd in part, rev'd in part and remanded*, 567 U.S. 387 (2012). Indeed, courts that have addressed functionally *identical* state and local measures to prohibit facial coverings by federal law enforcement or requiring them to provide identification has found irreparable harm. *See California*, 173 F.4th at 1069; *Virginia*, 2026 WL 2411521, at *14; *City of Philadelphia*, 2026 WL 1906075, at *13; *New York*, 2026 WL 2225423, at *25. This Court should do so as well.

The automatic nature of the irreparable injury stems both from the constitutional violation and the sovereign injuries that result. *California*, 173 F.4th at 1069. And granting the preliminary injunction would not result in harm to Defendants because "there can be no irreparable harm to a [government] when it is prevented from enforcing an unconstitutional statute . . . ." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). Thus, the United States satisfies this element of the preliminary injunction standard. *See United States v. Connecticut*, 566 F. Supp. 571, 579 (D. Conn. 1983) (concluding "without hesitation that the United States has shown that it will be

irreparably injured by the continuing violation of . . . a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute"), *aff'd without op.*, 742 F.2d 1443 (2d Cir. 1983), *aff'd without op.*, 465 U.S. 1014 (1984).

Additionally, the Challenged Laws pose several other irreparable harms, including endangering federal law enforcement officers, impeding their functions, and chilling federal activities. For instance, these provisions endanger federal officers because they seek to publicly expose their personal identities at a time of already escalating instances of violence or threats of violence against federal officers. *See, e.g.*, Hargis Decl. ¶¶ 6, 9-13. This exposure would facilitate escalating instances of harassment against those officers by agitators seeking to disrupt enforcement operations. *See* Paul Decl. ¶¶ 13-14; Allen Decl. ¶¶ 18-21; Hargis Decl. ¶¶ 19-21. For example, ICE officers are facing a drastic increase in death threats and assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them. *See, e.g.*, Baker Decl. ¶¶ 29-35 (describing threats against ICE officers). CBP has also seen a significant rise in assaults against officers and agents since January 2025. Hargis Decl. ¶ 6.

The Challenged Laws also impede federal functions because they fail to sufficiently account for the fact that federal officers need to avoid drawing attention while interacting with the public when performing their official duties. Disclosure of officers' identities and agency affiliation could place them or others at risk, including, for example, surveillance or plainclothes assignments, which would jeopardize such operations. *See* Paul Decl. ¶¶ 12-17; Allen Decl. ¶¶ 21-23; Hargis Decl. ¶¶ 20-21. Under the Challenged Laws, agents in such situations face a risk of prosecution or liability for merely doing their jobs in an inconspicuous manner as is called for by such scenarios. Further, the challenged provisions would enable suspects to identify officers who might be involved in future enforcement actions, including undercover operations. *See, e.g.*, Paul

Decl. ¶¶ 15-17; Allen Decl. ¶ 21; Hargis Decl. ¶ 21. Because suspects who recognize officers may try to evade apprehension and obstruct enforcement efforts, the discretion to protect officers' identities is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. *See, e.g.*, Paul Decl. ¶¶ 16, 17; Allen Decl. ¶¶ 18-20.

Federal agents around the country have recently been targeted for harm, including harassment, assault, and murder. Baker Decl. ¶¶ 29-37; Hargis Decl. ¶ 9. These targeted threats have expanded to include extended family members. For example, an FBI agent earlier this year was forced to abandon his FBI vehicle when a crowd of protestors rushed a group of federal law enforcement agents. Paul Decl. ¶ 14. The crowd subsequently vandalized the vehicle and stole the agent's personal items, including his FBI credentials and driver's license. *Id.* His name and local address were subsequently posted online. *Id.* The threats to the agent and his family, via social media and U.S. mail, have continued, necessitating the need for FBI protection measures. *Id.*

Another incident occurred a couple of weeks ago, on September 16, 2026, while ICE officers were conducting surveillance in Hyattsville, Maryland. Baker Decl. ¶ 39. During that surveillance, an agitator approached federal officers and made video recordings of the officers and their vehicles while the surveillance was underway. *Id.* The agitator, who was right next to the vehicle, also recorded himself berating the officers inside their vehicles and indicating his intent to impede immigration operations. *Id.* The agitator threatened to post the videos featuring the officers' faces to the online platform TikTok, and when one of the federal officers later checked the platform to see whether the videos had been posted, a simple search of "Hyattsville ICE" found two videos posted on the platform. *Id.*

Due to the nature of law enforcement operations, federal officers require flexibility to determine when to announce their identities. For example, CBP and ICE have discretion on when

they permit their officers and agents to wear facial coverings, whether to add or remove individual identifiers, and what identification is provided to members of the public upon request.[17] That is up to the agencies and officers based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting local rules or subject to civil liability. Removing this flexibility and requiring federal officers to identify themselves to any arrestee, protestor, or members of the public upon "request of another"—an added identification requirement that defies logic and not seen in other jurisdictions to date—would undermine officer safety and operational effectiveness, particularly when the consequence of noncompliance involves hefty penalties.

Accordingly, once officer safety or the integrity of an operation is compromised, the harm cannot be undone. Compliance with the challenged provisions would prevent federal law enforcement officers from effectively engaging in important federal enforcement operations. *See* Paul Decl. ¶¶ 15-17; Allen Decl. ¶ 25. And because the Challenged Laws carry hefty fines, the threat of such liability can chill officers from engaging in lawful conduct in the performance of their federal duties, which will endanger officers and limit their federal functions. Thus, officers may alter their conduct, or assume unreasonable risks to themselves to avoid exposure to enforcement, and that risk to officer safety or operational disruption creates immediate and concrete harm that cannot be remedied after the fact. Baker Decl. ¶ 44; Allen Decl. ¶ 26

For these reasons, the Challenged Laws threaten to "destroy the federal function" of law enforcement in the State of Maryland. *United States v. Fresno County*, 429 U.S. 452, 463 n.11, 464 (1977). Because the Framers of our Constitution "did not intend" for federal operations to "depend on the discretion of the state governments," *McCulloch*, 17 U.S. at 327, 362, Defendants

---

[17] For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce himself and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii).

cannot unilaterally impose their policy preferences on the Federal Government. Doing so "would bring back all the evils and embarrassments, which the uniform rule of the [C]onstitution was designed to remedy." 2 J. Story, Commentaries on the Constitution § 1099 (3d ed. 1858).

Finally, allowing states and localities to penalize federal officer conduct sets a precedent that would fragment federal operations across jurisdictions nationwide. Indeed, if the Challenged Laws were allowed to stand, there would be nothing to stop other state and local governments from imposing further unconstitutional restraints on the Federal Government. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a state to act unconstitutionally "would allow other States to do the same"). This could, in turn, create a "patchwork" system of laws, *id.*, under which federal agents would be subject to different regulations in each state or county, severely undermining the Federal Government's ability to uniformly enforce federal law.

**D. The Balance of Hardships and Public Interest Weigh in Favor of the United States**

The merged factors of the balance of equities and the public interest likewise favor the United States in this case. *See Nken*, 556 U.S. at 435. Once the moving party establishes, as here, a likelihood that the challenged action was unconstitutional, "a state is 'in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002) (quoting district court opinion); *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (same); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't.*, 2 F.4th 330, 346 (4th Cir. 2021) (same); *Ass'n of Am. Pub. v. Frosh*, 586 F. Supp. 3d 379, 397 (D. Md. 2022) (same).

As an initial matter, there is no public interest in a state or locality violating the Supremacy Clause by directly regulating federal law enforcement. *See Legend Night Club v. Miller,* 637 F.3d 291, 303 (4th Cir. 2011) ("[U]pholding constitutional rights is in the public interest."); *see also*

*Giovani Carandrola*, 303 F.3d at 521 (“Again, we agree with the district court that upholding constitutional rights surely serves the public interest.”); *Centro Tepeyac,* 722 F.3d at 191 (affirming that "the public interest favors protecting constitutional rights" when evaluating a preliminary injunction). There is, however, significant public interest in protecting federal officers’ safety and removing unlawful impediments to federal law enforcement operations. Indeed, “[f]rustration of federal statutes and prerogatives are not in the public interest[.]” *Alabama*, 691 F.3d at 1301. This is especially true when a state law violates the Supremacy Clause. *See Frosh*, 586 F. Supp. 3d at 397 (granting preliminary injunction and holding that “[t]he State [of Maryland] and the public have no legitimate interest in the operation of a state law that is likely preempted by federal law. When federal law preempts conflicting state law, the state law ‘constitutes an unconstitutional obstacle to federal law’ in violation of the Supremacy Clause.”).

Further, it is not in the public interest to require federal officers to comply with varying state and local standards for facial coverings and identification when federal policy is designed to comply with federal law. Likewise, it is not in the public interest to subject federal officers to increased harassment, doxxing, and violence, which can impact not only their official duties but also their personal lives and families. The aim of the Challenged Laws is to hinder federal officers from participating in crucial law enforcement operations in the State of Maryland and to chill effective enforcement of federal law. Such obstructionism is not in the public interest. Rather, the public has a strong interest in preserving constitutional order and effective federal law enforcement, including drug enforcement, as well as immigration and counterterrorism operations conducted in the State of Maryland. And the residents of Maryland benefit from federal law enforcement presence and operations that would otherwise be chilled or curtailed by enforcement of the Challenged Laws. Thus, the balance of equities weighs in favor of the United States.

Moreover, preliminarily enjoining the Challenged Laws will not cause harm to Defendants. *Legend Night Club,* 637 F.3d at 302–03 (holding that "the State of Maryland is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions"). Federal officers face penalties and operational disruption under the Challenged Laws, while an injunction would merely restore the status quo that existed before Defendants enacted their strikingly unconstitutional laws, laws that they themselves have questioned as running afoul of the Supremacy Clause and thus subject to injunctive relief. *Hughes v. Cristofane*, 486 F. Supp. 541, 546 (D. Md. 1980) ("[T]he only resulting hardship to the defendants will be a return to the status quo before the ordinance took effect."). Because Defendants can pursue their objectives through means that do not unconstitutionally regulate federal officers, the hardship of enjoining this specific mechanism is minimal. And although Defendants may disagree with the United States' priorities, they have no legitimate interest in interfering with the enforcement of federal law or putting federal officers at risk. Thus, not only does the balance of equities support a preliminary injunction, but the public interest would be served by the issuance of such an injunction. *See Mayo*, 319 U.S. at 445 ("No other adjustment of competing enactments or legal principles is possible."). Courts that have addressed state and local mask ban and identification laws have so ruled. *See California*, 173 F.4th at 1069; *City of Philadelphia*, 2026 WL 1906075, at *14; *Virginia*, 2026 WL 2411521, at *14; *New York*, 2026 WL 2225423, at *25. This Court should do so as well.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court preliminarily enjoin Defendants from implementing and enforcing the Challenged Laws as to federal law enforcement officers.

DATED: October 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*<u>/s/ Robert O. Lindefjeld</u>*
Robert O. Lindefjeld
Assistant Director (DC Bar No. 44423)
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste 6400 South
Washington, D.C. 20001
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I electronically filed the foregoing Memorandum in Support of Plaintiff's Motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system. Because Defendants have not yet appeared in this matter, in addition to sending a copy of the foregoing via certified U.S. Mail (with return receipt), the undersigned sent courtesy electronic copies of all pleadings herein to the following email addresses.

1. For Defendants State of Maryland, Anthony G. Brown, and Maryland Police Training and Standards Commission, a courtesy copy was provided via email on October 1, 2026, to:

   Office of the Attorney General
   civil_service@oag.maryland.gov

   Robert A. Scott, Chief of the Civil Division
   rscott@oag.maryland.gov

   Carolyn A. Quattrocki, Chief Deputy Attorney General for Governance & Litigation
   cquattrocki@oag.maryland.gov

2. For Defendant Prince George's County, a courtesy copy was provided via email on October 1, 2026, to:

   Anthony D. Jones, County Attorney
   adjones@co.pg.md.us

   Stephen Williams, Deputy County Attorney
   sawilliams@co.pg.md.us

3. For Defendant Montgomery County, a courtesy copy was provided via email on October 1, 2026, to:

   John P. Markovs, County Attorney
   john.markovs@montgomerycountymd.gov

   Edward B. Lattner, Deputy County Attorney
   edward.lattner@montgomerycountymd.gov

   Patricia Haggerty, Chief of the Division of Litigation
   patricia.haggerty@montgomerycountymd.gov

*/s/ Robert O. Lindefjeld*
Robert O. Lindefjeld
Assistant Director (DC Bar No. 44423)
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste 6400 South
Washington, D.C. 20001
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov
*Attorney for the United States of America*