# Ex. B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**STATE OF MARYLAND, ANTHONY BROWN, Attorney General of the State of Maryland, in his Official Capacity, MARYLAND POLICE TRAINING AND STANDARDS COMMISSION, PRINCE GEORGE'S COUNTY, MD, and MONTGOMERY COUNTY, MD,**

**Defendants.**

**No.** 1:26-cv-04110-JRR

**DECLARATION OF MATTHEW W. ALLEN**

I, Matthew W. Allen, declare as follows:

1. I am employed by the United States Department of Justice, Drug Enforcement Administration (DEA) as the Chief of Operations. I have held this position since July 30, 2025.

2. My career as a federal law enforcement officer began as a DEA Special Agent in 2002. As a Special Agent, I worked in a Southern California Drug Task Force, a Mobile Enforcement Team, and in DEA's Office of Professional Responsibility. Further, I have led Special Response Teams (SRT) in executing high-risk search and arrest warrants. In the performance of my Special Agent duties, I served in an undercover role on numerous occasions.

3. In my current position as Chief of Operations, I am the principal advisor to the Administrator and Deputy Administrator of DEA on enforcement-related matters. Under their direction, I am responsible for the overall direction of all programs and activities of DEA's Operations Division components throughout the world, including establishing and implementing DEA policy in all areas of operations. My experience includes serving as the Special Agent in Charge of the Los Angeles Division, from 2023 to 2025, as the Resident Agent in Charge of the Orange County

Resident Office, from 2016 to 2018, and as a Group Supervisor in the Riverside District Office from 2013 to 2016.

4. This declaration is submitted in support of the United States' claims and motion for a preliminary injunction in the above-captioned matter. The purpose of this declaration is to inform the Court about DEA's law enforcement operations in Maryland as they pertain to Maryland's recently enacted Senate Bill (SB) 0001 which amends Maryland Code Section 3-201 and Section 3-207 and adds two new sections, Sections 3-535 and 3-536 which take effect on October 1, 2026; Prince George's County Code Section 18-124 which was effective on April 29, 2026; and Montgomery County Code Section 35-13E which was effective on May 7, 2026.

5. Based on my experience and the nature of my official duties, I am familiar with the anticipated impacts on DEA that would occur throughout the State of Maryland if DEA were forced to comply with Maryland Code Sections 3-535 and 3-536, Montgomery County Code Section 35-13E, and Prince George's County Code Section 18-124.

6. This declaration is based upon my personal knowledge and information made available to me in my official capacity. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry into the above-captioned case.

**BACKGROUND**

7. DEA's mission "is to enforce the controlled substances laws and regulations of the United States and bring to the criminal and civil justice system of the United States, or any other competent jurisdiction, those organizations and principal members of organizations, involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States." https://www.dea.gov/about/mission. In the hierarchy of drug cases worked by local, state, tribal and federal law enforcement officers, DEA Special Agents work the highest level of drug trafficking cases, often involving international organized crime groups who regularly use violence targeted toward competitors, innocent members of the public, informants, and law enforcement officers. In addition, in January 2025, DEA Special Agents were granted and conferred the authority to perform the functions of an immigration officer, as set forth in Title 8, Chapter 12.

8. DEA has 4 offices operating in Maryland, as part of DEA's Washington Division. Approximately 52 DEA Special Agents currently operate in Maryland. Due to the proximity of Maryland to other states, and the nature of DEA's narcotics investigations, DEA Special Agents who are assigned to Washington Division offices in Virginia and the District of Columbia, frequently operate in Maryland. In

addition, because of the large quantities of illicit drugs that travel on the I-95 corridor through Maryland, DEA Special Agents assigned to divisions elsewhere in the U.S. at times come to Maryland, in furtherance of their investigations, to conduct law enforcement operations.

9. Maryland Code Section 3-535 prohibits, under threat of civil penalties, any law enforcement officer, defined to include federal law enforcement officers, from wearing certain kinds of face coverings while engaged in the performance of their duties in Maryland, subject to narrow exceptions.

10. Maryland Code Section 3-536 requires, under threat of civil penalties, any law enforcement officer, defined to include federal law enforcement officers, to wear their badge number or other identification number, last name, and agency or department on their outermost layer of clothing, while in performance of duty in Maryland, subject to narrow exceptions. It also requires law enforcement officers to verbally disclose their identification while engaged in the performance of their duties in Maryland, when requested.

11. If a face covering is worn in violation of Section 3-535, or a federal law enforcement officer violates the requirement in Section 3-536 to wear their badge number or other identification number, last name, and agency or department, the statute provides that the officer is guilty of a civil offense. This carries a maximum penalty of a fine of $1500.00.

12. Prince George's County Code Section 18-124 prohibits, under threat of criminal prosecution, any law enforcement officer, defined to include federal law enforcement officers, from wearing certain kinds of face coverings while interacting with a member of the public in the performance of their duties in Prince George's County, Maryland, subject to narrow exceptions. Section 18-124 also requires, under threat of criminal prosecution, any law enforcement officer, defined to include federal law enforcement officers, to display their name and identification number issued by the law enforcement agency who they represent without obstruction, subject to narrow exceptions.

13. If a face covering is worn or a federal law enforcement officer violates the requirement in Section 18-124 to display his or her name and identification number issued by his or her employer, the Code provides that the officer is guilty of a misdemeanor. This carries a term of imprisonment of up to six months and a fine of up to $5000.

14. Montgomery County Code Section 35-13E prohibits any law enforcement officer, defined to include federal law enforcement officers, from wearing certain kinds of masks or facial coverings while interacting with the public in the performance of

their duties in Montgomery County, Maryland subject to narrow exceptions. It also requires, subject to narrow exceptions, any law enforcement officer, defined to include federal law enforcement officers, to wear his or her badge number or other identification number, last name, and agency or department on his or her outermost layer of clothing, while in performance of his or her duties in the County and to verbally disclose his or her identification while engaged in the performance of his or her duties in the County, when requested.

15. If a face covering is worn or a federal law enforcement officer violates the requirement in Section 35-13E to wear their badge number or other identification number, last name, and agency or department, a Montgomery Police Officer or a member of public who witnesses the violation may file a complaint through an online platform. The Office of the County Attorney may use this information to assist in enforcing a violation of Section 35-13E.

16. If DEA were forced to comply with Maryland Code Sections 3-535 or 3-536, Montgomery County Code Section 35-13E, or Prince George's County Code Section 18-124, there is an increased risk of serious harm to officer safety and operational effectiveness.

17. These sections also purport to impose requirements and obligations on DEA agents that go beyond DEA policy or federal law.

***Anticipated Impacts on Officer Safety and Operational Effectiveness***

18. DEA Special Agents do not always visibly identify themselves as DEA, because to effectively execute many of their duties, the Special Agent's law enforcement identity must be protected. For example, most DEA investigations require Special Agents to conduct surveillance, meet with confidential informants, and engage in undercover operations. Their ability to do safely depends on not being identified as law enforcement. The existence of photographs and videos of their faces on public websites could compromise their ability to execute these responsibilities safely.

19. An ongoing concern for many DEA Special Agents is the fact that members of the media and the public may take still photos and videos of DEA Special Agents during law enforcement operations that can capture Agents' facial features and other identifiers. These photos and videos can be shown on media outlets and on social media websites and can be used to publicly harass and intimidate federal officers and their families. Relatedly, the use of online facial recognition technology to identify DEA Agents could enable the criminal organizations that DEA investigates—many of which are well-funded and international in scale—to target DEA Agents, which would significantly jeopardize the safety of Agents and their families. Wearing a face covering during an enforcement operation and otherwise

protecting against the ability to identify the Agent through a photo or video can mitigate these kinds of threat to Agents' safety.

20. As an example of this kind of safety concern, in June 2025, the image of a DEA Special Agent was posted on the social network BlueSky, with a caption "Trying to identify any of these FBI, Homeland Security, and ATF goons who invaded a Minneapolis community to kidnap and terrorize its members." The image appears to have been taken when the DEA Special Agent, who was not wearing a facial covering, was assisting in the execution of a search warrant. Another BlueSky user followed with a post identifying the DEA Special Agent by name and title and citing the use of multiple facial recognition models to match the image in question to the agent's picture on another site.

21. Forcing DEA Special Agents to reveal their personal identities or their affiliation with DEA could also jeopardize DEA's law enforcement operations. As noted, *supra* ¶ 18, DEA Special Agents often need to protect their identities as DEA Agents. This need arises not only in the context of undercover operations, but in the case of surveillance that takes place preceding the planned arrest of an individual, or the execution of a search warrant. In these situations, revealing Special Agents' identities and agency associations would enable suspects to circumvent law enforcement by allowing them to recognize Special Agents and thus attempt to flee or destroy evidence. Similarly, revealing Special Agents' identities and agency associations would enable suspects to identify those agents who may be involved in future undercover operations, which would obstruct those future actions.

22. Maryland Code Section 3-535 provides that the prohibition against wearing face covering does not apply if the officer is "actively engaged in an undercover operation." It is unclear whether this exception only applies while a DEA Special Agent is engaging in a particular undercover operation or if it applies to all DEA Special Agents who engage in undercover operations as part of their duties. DEA Special Agents would be vulnerable to the assessment of Maryland's police officers and prosecutors in determining whether DEA Special Agents are "actively engaged in an undercover operation."

23. Prince George's County Code Section 18-124 provides that the prohibition against wearing a face covering and the identification requirement do not apply while the officer is "actively engaged in an undercover operation or covert activity where facial concealment is necessary to protect the officer's identity or safety, with a judicially issued warrant." It is unclear whether this exception only applies when a judicial warrant is obtained by a DEA Special Agent to engage in a particular undercover operation or covert operation. If so, this could require DEA Special

Agents to obtain a judicial warrant for an undercover operation or covert activity in situations when a warrant is not required under the Fourth Amendment of the U.S. Constitution.

24. Maryland Code Section 3-536 provides that the identification requirement does not apply to an officer "working in a plainclothes, nonuniformed, or undercover capacity." Montgomery County Code Section 35-13E provides that the identification requirement and mask/facial covering prohibition do not apply to an "officer operating in plainclothes, non-uniformed, undercover capacity, or while engaged in a covert operation." Except for members of DEA's Special Response Teams, DEA Special Agents do not wear uniforms. DEA Special Agents would be vulnerable to the assessment of Maryland's police officers and prosecutors as to whether DEA Special Agents wearing tactical clothing and protective gear during enforcement operations are "nonuniformed."

25. In order to mitigate the above kinds of threats to safety and operational effectiveness, decisions on when and how to protect the personal identities of DEA Special Agents and their associations with DEA are made by DEA management. Losing this discretion will jeopardize critical investigative tools such as covert surveillance and undercover operations. Simply put, if the identities of DEA Special Agents are not protected, they cannot do their jobs effectively and safely.

26. Enforcement of Maryland Code Sections 3-535 and 3-536; Montgomery County, Code Section 35-13E; and Prince George's County Code Section 18-124 against DEA Special Agents would negatively impact DEA's ability to carry out its mission. Because DEA does not intend to require Special Agents to comply with these provisions, DEA Special Agents working in Maryland face the threat of civil and criminal penalties. This could chill DEA's enforcement activities.

**CONCLUSION**

27. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated on this __th day of September, 2026

MATTHEW ALLEN

Digitally signed by MATTHEW ALLEN
Date: 2026.09.28 18:18:47 -04'00'

Matthew W. Allen