**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-04110-JRR |
| | ) | |
| STATE OF MARYLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MONTGOMERY COUNTY, MARYLAND'S MOTION TO DISMISS COUNT III OF THE COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 2)**

Defendant Montgomery County, Maryland (the "County"), by and through undersigned counsel, hereby moves under Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, Rule 12(b)(6) to dismiss Count III of the Complaint (ECF No. 1), files this Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 2), and in support thereof states as follows:

## I. INTRODUCTION

The United States is suing Montgomery County, Maryland over a local law that expired when Maryland adopted a policy for which the Federal Bureau of Investigation voted. By its own terms, Montgomery County Code § 35-13E sunset upon the adoption of a uniform policy on face coverings and identification by the Maryland Police Training and Standards Commission ("MPTSC"). 2026 L.M.C. ch. 14, § 3. The MPTSC adopted that policy on September 2, 2026, with an implementation date of October 1, 2026, on a motion supported by the vote of the Special Agent in Charge of the FBI's Baltimore Field Office, a statutory member of the MPTSC who is "responsible for the management and operations of the FBI in Maryland and Delaware." Md. Code Ann., Pub. Safety § 3-203(a)(5); Paul Decl. ¶ 1 (ECF No. 2-3); Ex. 1; Ex. 2 (Md. Police

Training & Standards Comm'n, Attendance & Voting Records (Sept. 2, 2026)); Ex. 4 (Certified Tr. of MPTSC Sept. 2, 2026 Open Session) at 3:15–17, 42:14–17, 43:22–24; Md. Police Training & Standards Comm'n, *Police Training & Standards Commission Meeting (Sept. 2, 2026)*, MarylandPCTC, YouTube (uploaded Oct. 15, 2026), https://www.youtube.com/watch?v=CoK-5dNP8Zc (vote at 50:08–50:11) (last visited Oct. 26, 2026) ("Recording").

Merely twenty-two days later, this Special Agent signed a declaration "in support of the United States' claims and motion for a preliminary injunction." Paul Decl. ¶ 3. His declaration describes the sunset, but not the vote that triggered it. *Id.* ¶ 8.

On October 1, 2026, Plaintiff, the United States of America, filed the instant Complaint and Motion for Preliminary Injunction against Defendants, the State of Maryland, Attorney General Anthony G. Brown in his official capacity, the MPTSC, Prince George's County, and Montgomery County (collectively, the "Defendants").

The Complaint challenges the State's new law on law enforcement face coverings and identification, Md. Code Ann., Pub. Safety §§ 3-207(p)–(q), 3-535, 3-536 (the "State law"),[1] Prince George's County Code § 18-124, and Montgomery County Code § 35-13E. It claims that these laws violate the Supremacy Clause of the United States Constitution, specifically the intergovernmental immunity doctrine, by purporting to directly regulate the manner in which federal law enforcement officers perform their official duties.

Count III specifically challenges Montgomery County Code § 35-13E, the "Unmask ICE Act." The full text of § 35-13E is docketed at ECF No. 1-5 at 3–5. The Complaint alleges that the

[1] This memorandum cites §§ 3-535 and 3-536 as numbered in the enacted bill, 2026 Md. Laws ch. 612 (ECF No. 1-2), and as cited in the Complaint, the Motion for Preliminary Injunction, and the United States' declarations. As codified, those sections appear at Pub. Safety §§ 3-536 (face coverings) and 3-537 (identification). Sections 3-207(p) and (q) were not renumbered.

County law directly regulates federal law enforcement officers by: (1) prohibiting federal officers from wearing masks or facial coverings while interacting with the public in the performance of their duties in Montgomery County; (2) requiring federal officers to display visible identification; and (3) requiring federal officers to provide verbal identification while performing duties in Montgomery County. Compl. ¶¶ 89–90. Plaintiff alleges that these requirements interfere with federal control over federal law enforcement operations and create officer safety and operational risks, because federal agencies allegedly need flexibility and discretion concerning masks and personal identifiers. *Id.* ¶¶ 56, 60, 62. As recognized in the Complaint, § 35-13E sets forth several exceptions to the mask requirement, including masks required to prevent transmission of airborne disease, masks that protect against exposure to smoke during a fire, and gear necessary for Special Weapons and Tactical Team (SWAT) officers to protect their faces from physical harm while performing SWAT responsibilities. *Id.* ¶ 49; § 35-13E(b)(1)–(6), (c). Further, the requirements under this section do not apply to law enforcement officers operating in a plainclothes, non-uniformed, or undercover capacity, or while engaged in a covert operation. § 35-13E(h); *see* Compl. ¶ 51.[2]

Importantly, the Complaint acknowledges the fixed duration of § 35-13E and that it was "designed to automatically sunset" with the adoption of certain MPTSC policies. Compl. ¶ 46.

---

[2] The Complaint alleges inaccurately and incorrectly at Paragraph 8 that a Montgomery County Council attorney questioned whether Bill 5-26E is constitutional. The attorney in fact summarized part of an Economic Impact Statement, authored by an internal, non-legal Montgomery County office that, by law, provides the Montgomery County Council with information and analysis about pending County bills. *See* Montgomery County Code § 2-81B; *id.* Ch. 29A; Compl., Ex. D (ECF No. 1-5) at 24, Montgomery County Office of Legislative Oversight, Economic Impact Statement, Bill 5-26, Police – Mask or Facial Coverings – Prohibited (The Unmask ICE Act) at 1 (Feb. 24, 2026). The Economic Impact Statement noted Bill 5-26E may not be enforceable, citing a law school article that, after analysis, concluded the fate of state and local law enforcement face mask prohibitions is not clear under current constitutional analysis. The County's chief legal officer is the County Attorney. Montgomery County Charter § 213.

Section 3 of the Act that added § 35-13E to the County Code, titled "Sunset," states: "Section 1 of this Act must sunset and be of no further force and effect upon the adoption of a uniform policy by the Maryland Police Training and Standards Commission prohibiting the use of face coverings or requiring identification for law enforcement officers, as required by Senate Bill 1 (2026) (cross-filed as House Bill 155 (2026)), enacted by the Maryland General Assembly on April 13, 2026." 2026 L.M.C. ch. 14, § 3 (ECF No. 1-5 at 5). Section 1 of the Act is the provision that added § 35-13E. ECF No. 1-5 at 3. Indeed, the Complaint and the Motion for Preliminary Injunction reference statements from Montgomery County Councilmember Kristin Mink explaining the limited duration of the County law, pending adoption of MPTSC standards. Compl. ¶ 46; Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Mem.") 11–12 (ECF No. 2-2) (cited by internal page number). The Motion for Preliminary Injunction also describes § 35-13E as a "stopgap" pending adoption of the MPTSC standards. Pl.'s Mem. 11.

The MPTSC's policy prohibits the use of face coverings and requires identification for law enforcement officers. Ex. 1, MPTSC, Face Coverings and Identification Uniform Policy (adopted Sept. 2, 2026).[3] The FBI, through the Special Agent in Charge of its Baltimore Field Office, voted to adopt the very policy that ended § 35-13E. Ex. 2; Ex. 4 at 42:14–17, 43:22–24; Recording at 50:08–50:11. He holds his MPTSC seat by virtue of that office, Pub. Safety § 3-203(a)(5), and, in his own words, he is "responsible for the management and operations of the FBI in Maryland and Delaware." Paul Decl. ¶ 1. The United States' papers before this Court never mention that vote.

[3] The policy as posted on the MPTSC's website bears three dates: "Adopted by the Police Training and Standards Commission, September 2, 2026"; "EFFECTIVE: 10/01/2026"; and "Revised October 7, 2026." Ex. 1 at [1]. The revision consists of two editor's notes, which: (1) substitute the section numbers under which the State law was codified for the numbers in the enacted bill; and (2) correct a citation to the Code of Maryland Regulations. *Id.* The adoption and effective dates are unchanged, as are the policy's operative provisions. The State Defendants likewise date the policy's adoption to September 2, 2026. State Defs.' Mem. at 6 & n.4.

On October 1, 2026, the same day this suit was filed, the State law became effective. It regulates face coverings and identification for federal, state, and local law enforcement officers within the State of Maryland. Pub. Safety §§ 3-535, 3-536. And it prohibits counties from adopting their own rules on this topic: "A county, a municipality, or a law enforcement agency of the State or a political subdivision of the State may not adopt a policy, other than the uniform policy developed by the Commission, regarding the use of face coverings by law enforcement officers." *Id.* § 3-207(p)(3); *see id.* § 3-207(q)(3) (same, as to any policy "requiring the use of identification by law enforcement officers"). The State Defendants agree that these provisions preempt local law. State Defs.' Mem. at 5 & n.3.

As the Complaint notes, the County's law includes a savings clause providing that "[n]othing in this Section is to be interpreted or applied to create any requirement, power, or duty in conflict with any federal or state law." § 35-13E(i); Compl. ¶ 53. The State's uniform policy is now the only policy on these subjects that applies in Montgomery County.

On the same day that the lawsuit was filed, Plaintiff also filed the subject Motion for Preliminary Injunction, requesting that the Court preliminarily enjoin all Defendants from implementing or enforcing the challenged laws with respect to federal law enforcement officers. ECF No. 2 at 1. As discussed below, § 35-13E ceased to have any legal effect before the United States even filed suit. By its own terms, the County law was to "sunset and be of no further force and effect" upon the MPTSC's adoption of a uniform policy on face coverings and identification for law enforcement officers. The MPTSC adopted that policy *before* the Complaint was filed (September 2, 2026), and the policy became effective on the filing date (October 1, 2026). Independently, the State law took effect the same day; it both regulates the same subject and bars counties from legislating on it, superseding § 35-13E.

Because a defunct county law cannot be enforced against federal agents, there is no live Supremacy Clause controversy for the Court to adjudicate. The United States lacked standing to bring Count III when it sued, and the claim is moot in any event; it should be dismissed for lack of jurisdiction. If the Court does not dismiss Count III, it should defer decision until the Fourth Circuit decides *United States v. Virginia*, No. 26-1874, which presents informative questions and is set for argument on October 27, 2026. If the Court reaches the merits, the County adopts the State Defendants' defense of the State law. And the United States cannot carry its burden on a preliminary injunction: it cannot show a likelihood of success on the merits, and it cannot show the actual, imminent irreparable harm that preliminary relief requires; further, the balance of equities and the public interest do not tip in favor of Plaintiff with respect to a law that has no legal effect or power. Therefore, for the reasons further set forth below, Count III should be dismissed without prejudice, and the Motion for Preliminary Injunction should be denied.

## **II. LEGAL ARGUMENT**

### A. The United States Lacked Standing to Bring Count III When It Filed Suit Because § 35-13E Had Already Expired.

Article III limits the federal courts to cases and controversies, and standing is measured when suit is filed; the party invoking federal jurisdiction must have had "the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). The United States, as that party, bears the burden of establishing its standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff who challenges a law before it is enforced must show "a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Because standing goes to the Court's subject-matter jurisdiction, it is properly raised under Rule 12(b)(1), and on such a motion the Court "may

consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *see Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). As such, the Court may consider Exhibits 1 through 4, attached hereto, in deciding this motion. The MPTSC's published policy is posted on the MPTSC's official website, Ex. 1, and the archived recording of its September 2, 2026 open session is published on the MPTSC's official YouTube channel and embedded on the MPTSC's webpage, Recording. Both are public records of which the Court may take judicial notice, Fed. R. Evid. 201(b)(2); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), and both are self-authenticating official publications, Fed. R. Evid. 902(5); *see Williams v. Long*, 585 F. Supp. 2d 679, 692 (D. Md. 2008). Under Maryland's Open Meetings Act, the archived recording of an open session is deemed the minutes of that session. Md. Code Ann., Gen. Provis. § 3-306(b)(2)(i), (b)(3). Exhibit 2 is the MPTSC's attendance and voting record for that session, which records each member's vote, and Exhibit 4 is a certified transcript of that session (Veritext Legal Solutions, Oct. 22, 2026), cited by page and line; citations to the Recording are by timestamp.

Whether the defect is one of standing or of mootness matters, because the two doctrines place the burden differently and have different exceptions. A defendant "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," but "it is the plaintiff's burden to establish standing." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). And a dispute that is capable of repetition yet evading review may survive mootness, but "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review

will not entitle the complainant to a federal judicial forum." *Id.* at 191. When a law ceased to have effect before suit was filed, the burden stays with the plaintiff, and the exceptions to mootness do not apply.

Critically, § 35-13E expired by its own terms upon the MPTSC's *adoption* of the qualifying policy, which occurred on September 2, 2026. Ex. 1. The sunset clause is self-executing. It required no further act of the Council or the County Executive: § 35-13E "must sunset and be of no further force and effect upon the adoption of a uniform policy" by the MPTSC "prohibiting the use of face coverings or requiring identification for law enforcement officers." 2026 L.M.C. ch. 14, § 3. The MPTSC's policy does both of those things. Ex. 1 §§ IV–V. While the United States' own papers describe the sunset clause, they never mention that the MPTSC has adopted the policy that triggered it: the Complaint pleads the clause, Compl. ¶ 46; the Motion for Preliminary Injunction calls the county law a "stopgap," Pl.'s Mem. 11; and two declarants describe the sunset in declarations signed three and four weeks after the MPTSC acted, Paul Decl. ¶ 8; Baker Decl. ¶ 27 (ECF No. 2-5). Because the County challenges the facts on which jurisdiction rests, the Complaint's allegation that enforcement of § 35-13E is "certainly impending," Compl. ¶ 73, receives no presumption of truth. *See Kerns*, 585 F.3d at 192. The record refutes it: the MPTSC adopted the policy that ended § 35-13E four weeks before this suit was filed, with the vote of the FBI official whose declaration the United States filed. Ex. 2; Ex. 4 at 43:22–24; Recording at 50:08–50:11; *see* State Defs.' Mem. at 6 n.4 (noting the vote). From September 2 forward, § 35-13E proscribed nothing, so on October 1 there was no "credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159. Further, independently on October 1 the State law took effect and barred the County from having any policy on the subject other than the MPTSC's. Pub. Safety § 3-207(p)(3), (q)(3).

While the United States may errantly argue that the sunset was not triggered until the MPTSC's policy took effect on October 1, the result is the same. The policy took effect on October 1, the same day the State law took effect and the same day the United States filed its Complaint, which acknowledges that the State law "takes effect today, October 1, 2026." Compl. ¶ 73. On either reading, when the United States filed suit, § 35-13E had no force, and State law barred the County from reviving it. And even if the Court were to conclude otherwise, the claim is moot. *See* Part II.B, *infra*.

Because the United States had no stake in Count III when it filed suit, the Court lacks subject-matter jurisdiction and Count III should be dismissed under Rule 12(b)(1).

**B. In the Alternative, Count III Is Moot.**

"The mootness doctrine is rooted in the case-or-controversy limitation on federal judicial power contained in Article III, Section 2 of the Constitution." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). The Fourth Circuit has recognized that "[a] pending lawsuit is rendered moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)). "A court ruling in those circumstances would constitute an impermissible advisory opinion." *Id.* (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "Federal courts have no power to hear moot cases," and "the proper disposition of moot claims is to dismiss them for lack of jurisdiction." *Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 564 (4th Cir. 2024) (first quotation quoting *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006)).

In *Adams Outdoor*, a billboard company challenged provisions of a county sign ordinance that the county later amended. The Fourth Circuit held that "[i]njunctive and declaratory challenges to repealed ordinances become moot if there is little practical likelihood that the ordinance will be reenacted," and that the challenge to the amended provisions was moot because

"[t]he amended provisions can no longer be enforced against Adams, and Adams needs no prospective relief from provisions no longer in effect." 105 F.4th at 564 (citing *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001)). The same rule governs a law that expires on its own terms. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). In *Lighthouse*, a church challenged COVID-19 executive orders issued by the Governor of Virginia. The orders expired, and when the state of emergency ended on July 1, 2021, "the Governor's power to issue new executive orders involving COVID-19-related restrictions was extinguished." 20 F.4th at 163. The Fourth Circuit held that neither exception to mootness applied and directed that the case be dismissed as moot. *Id.* at 162–65.

Here, even if § 35-13E did not expire on September 2, it expired no later than October 1. Moreover, as of the filing date, the County's law was preempted by the State law, which bars any county "policy, other than the uniform policy developed by the Commission," on this precise topic. Pub. Safety § 3-207(p)(3), (q)(3); *see* Md. Const. art. XI-A, § 3; Md. Code Ann., Local Gov't § 10-206(b). The State Defendants read the statute the same way: their memorandum describes § 3-207(p)(3) and (q)(3) as "a provision preempting any local laws related to face coverings and identification by law enforcement officers," and cites the bill sponsors' statements that the uniform policy "preempts the adoption of other policies regarding face coverings by counties." State Defs.' Mem. at 5 & n.3. The County law's savings clause confirms that the County law shall not be "interpreted or applied to create any requirement, power, or duty in conflict with any federal or state law." § 35-13E(i). To the extent the question can be interpreted as one of mootness, the County bears the burden of showing it, and the County meets that burden. There is simply no live controversy over the enforcement of a law that has expired and that State law forbids the County to revive.

Further, the "voluntary cessation" exception does not apply. The exception derives from "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Beahn v. Gayles*, 550 F. Supp. 3d 259, 271–72 (D. Md. 2021) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)). In the legislative context, the Fourth Circuit has held that *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982), "is generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact 'precisely the same provision' held unconstitutional below," and that otherwise "statutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (quoting *Mesquite*, 455 U.S. at 289, and *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)).

Here, there is no practical likelihood of reenactment and no indication of intent to reenact. *See Am. Legion Post 7*, 239 F.3d at 605–06. Rather, as the Motion for Preliminary Injunction and the Complaint acknowledge, both the plain language of the County law and the cited statements of Councilmember Mink demonstrate that the lifespan of § 35-13E was, from enactment, intended to be limited and to end with the adoption of the MPTSC policy. 2026 L.M.C. ch. 14, § 3; Compl. ¶ 46; Pl.'s Mem. 11–12. Moreover, reenactment here is not merely unlikely; it is prohibited by State law. Pub. Safety § 3-207(p)(3), (q)(3).[4] Nor can the cessation be viewed as litigation-driven

[4] The MPTSC's policy allows "[a]n agency" to "supplement this policy with more restrictive local uniform standards." Ex. 1 § VII.E. That provision speaks to "[a]n agency," and an agency's standards govern its own officers. The Commission's Executive Director described the allowance the same way at the September 2 session: an agency "can add to it; you can't take away from it," and the uniform policy, which has "the force and effect of the law as a regulation would," is "being adopted verbatim by every law enforcement agency." Ex. 4 at 25:19–26:7; *see id.* at 11:10–17,

maneuvering: the Council wrote the sunset into the law in April 2026, five months before the United States sued, ECF No. 1-5 at 2, 5, 13, and the triggering event was independent State action. Similarly, in *Lighthouse*, the Fourth Circuit declined to apply the exception where the restrictions ended "in response to changed circumstances concerning COVID-19 and not in response to litigation," and it found it "absolutely clear" that the expired restrictions could not reasonably be expected to be reinstated, because the Governor's power to reissue them had been "extinguished." 20 F.4th at 163–64. The same is true here.

The related "capable of repetition yet evading review" exception likewise has no purchase here. It applies only if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again," and the "party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application." *Lighthouse*, 20 F.4th at 165 (quoting *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007), and *Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013)). A County law that State law now forbids is not one to which the United States can reasonably expect to be subject again.

Nor does harm remain from when § 35-13E was effective. The Office of the County Attorney did not prosecute any code enforcement cases under § 35-13E against any federal law enforcement officer during the period it was in effect or following its expiration. Ex. 3 (Decl. of County Attorney John P. Markovs) ¶ 4. The United States does not allege otherwise. The relief Count III seeks is entirely prospective: a declaration that § 35-13E is invalid as to federal law enforcement officers and an injunction against its enforcement. Compl. ¶ 92; *id.*, Prayer for Relief

---

19:7–18. It does not restore the authority that § 3-207(p)(3) and (q)(3) withdrew from counties, and § 35-13E reached every law enforcement agency operating in the County. § 35-13E(a)–(b).

¶¶ A–B. However, the United States "needs no prospective relief from provisions no longer in effect." *Adams Outdoor*, 105 F.4th at 564.

Whether for lack of standing or for mootness, the Court lacks subject-matter jurisdiction over Count III. Because the defect is jurisdictional, the dismissal must be without prejudice. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

### C. If the Court Does Not Dismiss Count III, It Should Defer Decision Until the Fourth Circuit Decides United States v. Virginia.

A district court may stay or defer proceedings as part of "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The parties to the two cases need not be the same, nor the issues identical. *Id.* The power has limits. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," and the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. In *Landis*, the lower courts had stayed challenges to a federal statute until a test case brought by the Government in another court was finally decided on appeal. The Supreme Court held the stay "immoderate" to the extent it ran past the first decision in the test case, and it fixed that decision as "the uttermost limit," "laying to one side the question whether it should even go so far." *Id.* at 256–57.

That power fits this case. The United States' claim against § 35-13E turns on a single question of law: whether a rule of conduct that applies to all law enforcement officers, federal officers included, is a "direct regulation" of the federal government. The Fourth Circuit has that

question before it in *United States v. Virginia*, No. 26-1874 (4th Cir.), Dkt. 22 (calendaring argument for Oct. 27, 2026). The district court in that case has already ruled, Pl.'s Mem. 2, so the County is asking the Court to wait for the decision on appeal, which is past the point *Landis* fixed for the stay before it. Three differences justify that request. First, the United States is the plaintiff in *Virginia*. It is not being made to stand aside while a stranger settles the rule of law; it is litigating that rule itself. Second, unlike the district court decision that marked the limit in *Landis*, the Fourth Circuit's decision will bind this Court, and the appeal is set to be argued on October 27, 2026. Third, there is no fair possibility that waiting will damage the United States: § 35-13E has expired, and the only law that now governs federal officers in Montgomery County is the State's, which is the subject of Count I. Nor will the record change while the Court waits, because the hearing set for December 10 is on argument and exhibits, without testimony. Scheduling Order, ECF No. 10. The Fourth Circuit's September 3, 2026 order denying the Commonwealth's motion for a stay pending appeal, *see* Pl.'s Mem. 20 & n.14, does not decide the appeal; a stay pending appeal turns on four factors, only one of which concerns the merits. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The County therefore asks, in the alternative, that the Court defer decision on Count III, and on the Motion for Preliminary Injunction insofar as it concerns the County, until the Fourth Circuit rules, with a joint status report due within fourteen days of that decision.

**D. The Motion for Preliminary Injunction Should Be Denied.**

A preliminary injunction is "an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). To obtain one, the movant must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm absent preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant must establish all four elements

to prevail, and each "must be satisfied as articulated." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam). The United States treats the third and fourth factors as merged, Pl.'s Mem. 14 (citing *Nken*, 556 U.S. at 435), and the County does not dispute it. While failure on any single factor defeats the motion, Plaintiff's motion fails on each of them.

**1. No likelihood of success on the merits, because the County law is no longer in force.**

As discussed above, § 35-13E had ceased to have any effect by the time this suit was filed. A plaintiff cannot establish a likelihood of success in enjoining a law that has no continuing legal effect. The point follows directly from the nature of the relief sought. "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing," *Murthy v. Missouri*, 603 U.S. 43, 58 (2024), and "[t]o obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury," *id.* at 69. A request to enjoin enforcement of a law is not available where there is no longer an active case or controversy with respect to the enforcement of that law. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). With no live Supremacy Clause violation to adjudicate, the United States cannot show a likelihood of success on the merits.

Because § 35-13E has no force, the Court need not and should not decide whether it was valid while it was in force. Should the Court reach that question, the County adopts and incorporates by reference the State Defendants' defense of the State law to the extent it applies to § 35-13E as enacted, both in opposition to the motion and, in the alternative, as a ground for dismissing Count III under Rule 12(b)(6). State Defs.' Mem. at 20–29 (Part II.B.ii).

**2. No irreparable harm, because a defunct County law poses no actual or imminent threat.**

To establish irreparable harm, "the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent,'" and the harm must be one that "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991), and *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 680 (7th Cir. 2012)) (internal quotation marks omitted). Because an injunction looks forward, the question is whether a danger of future violation exists. The movant "must satisfy the court that relief is needed," which requires "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). In *W. T. Grant*, where the defendant director resigned from one board in each challenged interlock soon after suit was filed, the Supreme Court held that the cases were not moot but affirmed the refusal to enter an injunction. *Id.* at 630, 633–36. In the pre-enforcement setting, that danger turns on whether the law reaches the movant's conduct and whether the officials who enforce it have disavowed doing so. *See Babbitt*, 442 U.S. at 302 (credible threat where "the State has not disavowed any intention of invoking the criminal penalty provision"); *Driehaus*, 573 U.S. at 164–65 (credible threat where the law had been invoked before and the respondents "have not disavowed enforcement").

The United States cannot make that showing here. The County law has sunset and been preempted by State law, so the threshold question answers itself: no County law reaches the officers' conduct. The plain language of the County Code and the statements of Councilmember Mink, which the United States itself cites, make clear that § 35-13E has ended. Federal agents face no present or impending prospect of being required to identify themselves or to remove face

coverings under a county law that no longer exists. Any asserted threat of enforcement is not "actual and imminent," it is nonexistent.

The United States' own theories of harm confirm the point. It argues that "[i]rreparable harm necessarily results from the enforcement of a state or local law that violates the Supremacy Clause," Pl.'s Mem. 24, and that its officers "face a catch-22" between complying and risking penalties, *id.* at 16. Both theories presuppose a law that can be enforced. An officer who wears a face covering in Montgomery County today violates no County law.

Nor does the record from the period when § 35-13E was in force show harm. The Office of the County Attorney, the office through which § 35-13E was to be enforced, § 35-13E(g), prosecuted no code enforcement case under § 35-13E against any federal law enforcement officer while the section was in effect or since. Ex. 3 ¶¶ 2, 4. None of the four declarations identifies a Montgomery County operation that was cancelled, delayed, or changed because of § 35-13E, or an officer who was identified or threatened because he complied with it. The ICE declarant's accounts of doxxing involving Maryland-based officers do not mention Montgomery County or say how the officers were identified, Baker Decl. ¶¶ 36–38; the one surveillance incident she describes in detail took place in Hyattsville, in Prince George's County, *id.* ¶ 39. The DEA's example involves a social-media post about an operation in Minneapolis. Allen Decl. ¶ 20 (ECF No. 2-4). The CBP declarant describes no incident in Maryland at all. Hargis Decl. (ECF No. 2-6). Further, by the United States' own account, much of the work its declarants describe fell outside the section, which did not apply to officers "operating in plainclothes, non-uniformed, undercover capacity, or while engaged in a covert operation." § 35-13E(h). The ICE declarant states that ICE "routinely conducts investigations and surveillance in plain clothes." Baker Decl. ¶ 43. The DEA's declarant states that, "[e]xcept for members of DEA's Special Response Teams,

DEA Special Agents do not wear uniforms," and acknowledges that § 35-13E(h) exempts such officers from both the identification requirement and the mask prohibition, although he says agents in tactical clothing and protective gear "would be vulnerable" to local officials' assessment of whether they are "nonuniformed." Allen Decl. ¶ 24. And Congress itself requires federal law enforcement personnel who support the response to a civil disturbance to "visibly display" a name or other individual identifier and the name of their agency, with exceptions for personnel who do not wear uniforms and for undercover personnel. 10 U.S.C. § 723(a), (c). And the CBP declarant describes face coverings and the removal of identifying information as something CBP permits "in limited and specific circumstances." Hargis Decl. ¶ 14. Neither Congress nor the United States' own declarant treats visible identification as inherently unsafe.

The FBI's declaration, in particular, does not supply the missing showing. *Winter* requires that irreparable harm be "likely"; a "possibility" is not enough. 555 U.S. at 22. The Paul Declaration never says that harm is likely, instead saying that enforcement "could reasonably be expected" to endanger agents and to "risk circumvention of the law." Paul Decl. ¶¶ 12, 15, 18; *see* 5 U.S.C. § 552(b)(7)(E)–(F). Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). And the one operational example the declaration gives is surveillance that must be conducted "covertly," Paul Decl. ¶ 16, which § 35-13E(h) exempted as a "covert operation" and which falls within the covert-investigation exemptions of the uniform policy adopted on a motion for which the declarant voted. Ex. 1 §§ III.B, IV.C, V.B; Ex. 2; Recording at 50:08–50:11. The Paul Declaration does not establish that irreparable harm is likely in Montgomery County.

Further, the timing of this suit undercuts any claim of urgency. Section 35-13E was in force for nearly four months, and the United States did not challenge it until after it had expired.

A party requesting a preliminary injunction "must generally show reasonable diligence," *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam), and delay "may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction," *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)). The County does not suggest that the United States was required to sue sooner. The point is that the section and federal operations coexisted for the whole of the section's life without a single code enforcement case under § 35-13E, Ex. 3 ¶ 4, and a movant that waited until a law had lapsed cannot claim an emergency as to that law. Indeed, the FBI's senior special agent in Maryland claimed no emergency when he voted for Maryland's policy on September 2, 2026. The transcript records no statement by him at that session other than his roll-call response and his vote. Ex. 4 at 3:15–17, 43:22–24.

**3. The equities and public interest favor denial.**

There is no equitable or public interest in enjoining a law that imposes no present obligation or threat and, in fact, has no effect. The United States relies on the rule that a state is "in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional." Pl.'s Mem. 28 (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)). That rule assumes a likelihood of success the United States cannot show, and it presupposes a law that someone is enforcing. An injunction against a defunct County law would serve no purpose other than to issue what is effectively an advisory pronouncement. It would also have the Court rule on the constitutionality of an expired county law while the Fourth Circuit is considering informative questions. And it would imply that the County stood ready to enforce a law, which was not enforced during its effective term or since its expiration. Ex. 3 ¶ 4. The public interest the Council pursued in 2026, that officers who exercise

police authority in Montgomery County show their faces and identify themselves, is now secured by the State's uniform policy. This is not a proper basis for a preliminary injunction, and the request should be denied.

Should the Court nonetheless enter any relief against the County, it should reach no further than § 35-13E as applied to federal officers acting within the scope of their federal duties. It should not touch the State's uniform policy, the County's authority over its own police, or State and local officers who perform immigration functions under agreements authorized by 8 U.S.C. § 1357(g), who are not treated as federal employees except for specified purposes, *see id.* § 1357(g)(7)–(8). Count I pleads only "Maryland's enforcement" of the State law, Compl. ¶ 81, and the Complaint alleges no enforcement or threatened enforcement of the State law by the County; relief on Count I, if any, should run against the State Defendants. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

## **III. CONCLUSION**

Section 35-13E ended by its own terms four weeks before the United States sued to enjoin it. There was no live controversy as to Montgomery County when this suit was filed, and there is none now. Count III should therefore be dismissed without prejudice for lack of subject-matter jurisdiction. If the Court does not dismiss Count III, it should defer decision until the Fourth Circuit decides *United States v. Virginia*. In all events, the Motion for Preliminary Injunction against Defendant Montgomery County should be denied.

Respectfully Submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

/s/ Patricia V. Haggerty
Patricia V. Haggerty

Chief, Division of Litigation
Federal Bar No. 18472
Patricia.Haggerty@montgomerycountymd.gov

101 Monroe Street, Third Floor
Rockville, Maryland 20850
Tel: (240) 777-6700

/s/ Erek L. Barron, Esq.
Erek L. Barron, Esq.
Federal Bar No. 15693
EBarron@mintz.com
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, D.C. 20004
Tel: 202-434-7300

*Attorneys for Defendant Montgomery County, Maryland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 26, 2026, the foregoing was filed through the Court's CM/ECF system, which will send notice of filing to all counsel of record.

_/s/ Erek L. Barron, Esq. _________
Erek L. Barron